**ST. LOUIS UNION TRUST COMPANY,** as Successor Trustee under the Will of Adolphus Busch, Deceased, Respondent,

v.

Edmee Busch GREENOUGH et al., Respondents, Appellants.

No. 44713.

Supreme Court of Missouri.

Division No. 1.

Sept. 12, 1955.

Motions for Rehearing or to Transfer to Court en Banc Denied and Opinion Modified on Court's Own Motion Oct. 10, 1955.

Bryan, Cave, McPheeters & McRoberts, Thomas S. McPheeters, Thomas S. McPheeters, Jr., St. Louis, for plaintiff-respondent St. Louis Union Trust Co.

Shepley, Kroeger, Fisse & Shepley, Frank H. Fisse, Ethan A. H. Shepley, St. Louis, for defendants-respondents Edmee Busch Greenough and Clara Busch Liengme.

Carter, Bull & Baer, Emmet T. Carter, John M. Hadley, St. Louis, for defendants-respondents Leicester Busch Faust and Audrey F. Wallace.

Mark D. Eagleton, Shepley, Kroeger, Fisse & Shepley, Frank H. Fisse, J. J. Thyson, Thomas F. Eagleton, Leland Jones, St. Louis, for defendants-respondents Alice E. Busch and others.

Lewis, Rice, Tucker, Allen & Chubb, R. Walston Chubb, Lyle M. Allen, Jr., Fred A.

Gissler, St. Louis, for defendants-appellants William R. Arthwein and others.

William R. Orthwein, Alfred L. Grattendick, St. Louis, for defendants-appellants Lilly Magnus Blabon and others.

Simpson, Thacher & Bartlett, George M. Bentley, New York City, Jones, Hocker, Gladney & Grand, George S. Roudebush, St. Louis, for defendant Aimee M. Flanigan.

Thompson, Mitchell, Thompson & Douglas, James M. Douglas, St. Louis, Robert H. Dunlap, Dunlap, Holmes, Ross & Woodson, Kenneth A. Millard, Pasadena, Cal., for respondent William H. Berg and others.

Fred A. Sheppard, St. Louis, for defendant-respondent Sam E. Woods.

Harry Richards, U. S. Atty., Wayne H. Bigler, Jr., Asst. U. S. Atty., St. Louis, Dallas S. Townsend, Asst. Atty. Gen., James D. Hill, George B. Searls, Irwin A. Seibel, Attorneys, Department of Justice, Washington, D. C., for defendant-appellant Brownell, Jr., Attorney General of the United States.

COIL, Commissioner.

■ The successor trustee under the will of Adolphus Busch brought an action to construe the will so that the trustee may determine those entitled to the corpus of one of the testamentary trusts. Appellate jurisdiction is in this court because it affirmatively appears that the "amount in dispute" exclusive of costs exceeds $7,500. Mo.Const.1945, Art. V, § 3, V.A.M.S.

Adolphus Busch died in 1913 leaving a will executed in 1908 and three codicils executed in 1910, 1911, and 1912, respectively. Testator was survived by his widow and his seven children, two boys and five girls. After making specific bequests to charities and employees, bequeathing certain personal property to his wife, and providing a life estate for her in a certain villa in Germany, he conveyed the residue of his estate to trustees and in effect directed them to divide it into eight equal parts and to convey one share to his wife as her

absolute property. Two shares were to be conveyed to testator's elder son, August A. Busch, with the provision that should that son die before such conveyance, the two shares were to descend and be distributed under the laws of Missouri as though the son had died intestate as to such shares; and with the further provision that August A. Busch was to be responsible for the care of his invalid brother Carl (authorizing an expenditure of up to $12,000 a year during Carl's life for his care and maintenance), and further providing that prior to the trustee's conveying the two shares to August, the charge imposed upon him for Carl's care and maintenance was to be secured "in such manner as the trustees may determine."

One each of the remaining five shares was to be held in trust for the benefit of each of his five daughters. The trustees in their discretion could pay to each daughter out of her respective share the sum of $100,000, the balance of each share to be held and managed separately for each daughter during her life. As to the trusts for three of the daughters, Edmee, Anna, and Clara, the trustees were authorized to pay over to them portions of the corpus of their shares; that provision did not apply to the trusts for his two other daughters, Nellie and Wilhelmine. The income from the respective shares or the portions remaining of the shares of all the daughters was to be paid to them in installments.

The will then provided in paragraph 2 of Article Fifth: "At the death of any daughter, or in the event of such death before me, or before the division or distribution is had, then the share assigned to her or corresponding to her interest, or which would have been assigned to her, or so much of said share as shall remain in the hands of said trustees, shall be by said trustees or their successors distributed in equal shares to her husband, if a husband survive her, and her children, or in the event of a deceased child or children, to the respective descendants of such child or children. If there be no child or descendants of a child, then one-fourth (¼) of said share shall go absolutely to the surviving husband, and the balance to the brothers and sisters of such daughter, per stirpes and not per capita. If there be neither child nor descendants nor husband surviving, then the entire share shall be distributed to the brothers and sisters of such daughter, per stirpes and not per capita."

Paragraph 1 of testator's third codicil, executed June 7, 1912, changed the above-quoted provision as to the distribution of Wilhelmine's share by providing in lieu thereof: "At the death of my said daughter, Wilhelmine Scharer, whether her death occurs before mine, or before the distribution or division is had, then the share assigned to her or corresponding to her interest, or which would have been assigned to her, or so much of said share as shall remain in the hands of said trustees, shall be by said trustees, or their successors distributed in equal shares to her children, if any, or in the event of a deceased child or children, to the respective descendants of such deceased child or children sharing per stirpes with her living children. If there be no child or descendants of a child, then said share shall go absolutely to the brothers and sisters of my said daughter per stirpes and not per capita."

The will further provided spendthrift clauses for his daughters Nellie and Wilhelmine; provided that if testator's wife predeceased him the one-eighth interest given to her would become part of his residuary estate so that the residue would then be divided into seven equal shares instead of eight; and it gave broad powers to the trustees with reference to investments providing, however, that the son, August A. Busch, was to be continued as president of the Anheuser-Busch Brewing Association, and that the trustees were to vote the shares in that company to effectuate the testator's direction in that respect.

The first, second, and third codicils, in addition to the change effected by the third heretofore noted, and except for one other provision to be presently noted, provided in

effect that the shares of stock in other of testator's companies, viz., the Manufacturers Railway Company, the Busch-Sulzer Bros.-Diesel Engine Company, and the American Bottle Company, were to be so voted by the trustees that August A. Busch was to remain in control of those companies. By the second codicil, testator also provided that in order to effectuate his "desire to treat them [the children] with equal liberality", certain advancements were charged by him against them on his private books and that such advancements would constitute part of his estate and be deducted from their respective shares; that his treatment of the advancements contained in his private books was to be regarded by them as "satisfactory, fair and final."

The first matter for determination is the intent of the testator evidenced by the language contained in the last sentence of paragraph 1 of the third codicil, to wit: "If there be no child or descendants of a child, then said share shall go absolutely to the brothers and sisters of my said daughter per stirpes and not per capita."

As has been noted, testator's wife and seven children survived him. His daughter Wilhelmine, who at her death was Wilhelmine B. Woods, died in 1952 without a child or descendants of a deceased child surviving her. She was survived by two of her sisters, Clara (Clara B. Liengme) and Edmee (Edmee B. Greenough). Her brother, August A. Busch, and her sister, Anna (Anna B. Faust), predeceased Wilhelmine and left descendants surviving Wilhelmine. Her sister, Nellie (Nellie B. Loeb) predeceased Wilhelmine and left surviving Wilhelmine an adopted son of Nellie's daughter. Her brother Carl (designated by the testator as an invalid and who received no primary share, and with whose care and maintenance August A. Busch was charged) predeceased Wilhelmine without issue; he had never married.

The trial court found, inter alia, in its decree: "That the language 'If there be no child or descendants of a child, then said share shall go absolutely to the brothers and sisters of my said daughter, per stirpes and not per capita' has the legal effect of creating a remainder in the brothers and sisters of the said Wilhelmine Busch Woods who survived her, and in the children and descendants of deceased children who survived Wilhelmine Busch Woods of such brothers and sisters who did not survive her, which remainder was not capable of being devised, nor capable of descent, nor could any alienation thereof by a remainderman be effective, unless and until said remainderman survived to the date of death of Wihelmine Busch Woods and the said Wilhelmine Busch Woods died without a child or the descendants of a child surviving her."

Certain appellants contend that the trial court erred in so finding in that they are of the view that the clause in question should be construed to mean that the testator gave vested remainder interests to Wilhelmine's brothers and sisters subject to divestment in the event that Wilhelmine left a child or a descendant of a child surviving at her death, and that consequently at Wilhelmine's death, her brothers' and sisters' remainder interests became indefeasibly vested and that the appellants so contending are, therefore, entitled to receive certain portions of the corpus of the trust estate which have "devolved upon them through two sisters of the life tenant who predeceased her." The appellants so contending are the surviving executors and trustees who, under that construction, would be entitled to receive portions of the remainders in their fiduciary capacities for the benefit of certain beneficiaries.

The other appellant on this aspect of the case is the Attorney General of the United States whose interest arises by reason of a certain vesting order issued under the Trading with the Enemy Act, whereby the Attorney General, as successor to the Alien Property Custodian, vested in himself, for the benefit of the United States, the right, title, and interest which certain enemy nationals might have in Wilhelmine's trust. The possible interests of these nationals would be derived through Wilhelmine's deceased brother Carl. The Attorney General contends that, irrespective of the valid-

ity of the contentions of other appellants, Carl, who predeceased Wilhelmine and left no issue, had an interest at Wilhelmine's death which should pass through Carl's estate.

■ We have the duty to determine, if possible, the intent of the testator as expressed by the language in question. In our attempt to do so, we examine the will as a whole.

We repeat the particular language to be construed: [If at Wilhelmine's death] "there be no child or descendants of a child, then said share shall go absolutely to the brothers and sisters of my said daughter per stirpes and not per capita."

■ Now it is true that "per stirpes" means "'through or by roots or stocks, by representation'". O'Reilly v. Jackson, Mo., 269 S.W.2d 631, 635. Therefore, the expression "per stirpes and not per capita" describes or designates a mode or method by which gifts to substituted legatees are to be distributed. Under a per stirpes distribution, the substituted legatees collectively take the share which their respective deceased ancestor would have taken if he had been living. Consequently, it is clear that the words "per stirpes and not per capita" are not strictly applicable to, and are technically inappropriate when used in connection with, named legatees who are primary takers. Thus, "to Wilhelmine's brothers and sisters, per stirpes and not per capita," was not a technically appropriate use of "per stirpes" because the "brothers and sisters" were not *substituted* legatees and the gifts to them were not *substitutional* gifts. Even so, however, it seems clear to us, from an examination of the whole will, that testator intended those words (per stirpes) to have meaning and that the intended meaning is sufficiently definable from the context in which the expression was used. It would, therefore, do violence to testator's definable intention to say that, because the expression "per stirpes and not per capita" is not technically an appropriate one as applied to Wilhelmine's brothers and sisters, it is meaning-

less and that the will, consequently, should be construed as though the phrase had never been inserted.

■ We find little difficulty in determining that when the testator used the phrase "per stirpes and not per capita" he intended to provide for substituted legatees in the event that at the time of distribution, any of the primary legatees (Wilhelmine's brothers and sisters) were deceased. This, because it is clear that in the very paragraphs of the will and of the third codicil wherein testator said, to her brothers and sisters, "per stirpes and not per capita," he was providing for a plan of distribution which involved gifts over to substituted legatees. In paragraph 2 of Item Fifth of the will and in paragraph 1 of the third codicil the testator provided that the substituted takers were to be the descendants of Wilhelmine's deceased child or children. In the sentence immediately preceding the one now under consideration the testator said that at the death of Wilhelmine her share should be "distributed in equal shares to her children, if any, or in the event of a deceased child or children, to the respective descendants of such deceased child or children sharing per stirpes with her living children." The testator indicated thereby that he recognized that only substituted legatees could take per stirpes and demonstrated, we think, that he was not using "per stirpes" in any other sense in the last sentence of paragraph 1 of the third codicil. So that we think testator intended by the expression to her brothers and sisters, "per stirpes and not per capita" in the last sentence of paragraph 1 of the third codicil to provide for substituted takers for deceased brothers and sisters of Wilhelmine.

Now, inasmuch as the substituted takers mentioned, in the sentence immediately preceding, were Wilhelmine's descendants, it would appear that the testator had in mind the plan that the descendants of his children would take under his will. We should have no particular difficulty, therefore, in supplying "descendants" (who survived Wilhelmine) of deceased brothers and sisters as the substituted legatees

whom the testator intended to take the share which their parents or other ancestors would have taken if living; such substituted takers to take per stirpes and not per capita. We think such a construction is compelled once it is recognized that testator intended that the corpus or the remainder of the corpus of each of the five trust shares was to be distributed at the death of the life beneficiary among the respective surviving children and the respective descendants of any deceased child, or children, per stirpes. We find from the plan of the will that testator meant to provide the same kind of a distribution in the event that any daughter died without issue, i. e., to her brothers and sisters and to the surviving descendants of deceased brothers and sisters.

■ So that we conclude that testator intended by what he said in the last sentence of paragraph 1 of the third codicil to mean that "If there be no child or descendants of a child, then said share shall go absolutely to the brothers and sisters of my said daughter, and the then living descendants of deceased brothers and sisters, per stirpes and not per capita."

■ The Attorney General contends, however, that as to Wilhelmine's brother Carl, who left no descendants, there was no condition express or implied that he, as a member of the named class of Wilhelmine's brothers and sisters, had to survive Wilhelmine in order to have his remainder vest absolutely at Wilhelmine's death. In other words, the argument is that even if testator intended to provide that the surviving descendants of brothers and sisters who did not survive Wilhelmine were substituted takers, per stirpes, for the particular deceased brother or sister, still there was no provision as to the share of a brother who did not survive Wilhelmine and who did not leave descendants living at Wilhelmine's death; that, therefore, whether Carl's remainder was a vested remainder subject to divestment by Carl predeceasing Wilhelmine and *leaving* descendants or a contingent remainder contingent upon the events of Carl's *predeceas-*

*ing* Wilhelmine and Carl's *leaving* descendants surviving Wilhelmine, under either construction there was no condition that Carl had to survive Wilhelmine as a condition precedent to his estate. The argument is somewhat persuasive and finds some support in the cases of Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, and Tapley v. Dill, 358 Mo. 824, 217 S.W.2d 369. We reject that contention in the instant case, however, for the reason that we find what we believe to be testator's contrary intention. That is to say, once we have determined, as we have done heretofore and we think correctly so, that it was testator's intention that in the event Wilhelmine died leaving surviving her neither a child nor a descendant of a deceased child, the takers of Wilhelmine's trust estate were to be Wilhelmine's brothers and sisters and the then living descendants of deceased brothers and sisters, we have by the clear import of that determination also determined that testator intended to exclude as a primary legatee any brother or sister who predeceased Wilhelmine. This, because as we see it, the provision and the only provision relating to *deceased* brothers and sisters was that at Wilhelmine's death substituted takers (the time of Wilhelmine's death was the only time the presence or identity of the substituted takers could be determined) were to take the shares which their respective parent or other ancestor would have taken if living at the time of Wilhelmine's death. Thus, testator said, in effect, at Wilhelmine's death *substituted takers* will take the shares of deceased brothers and sisters. He must have meant, therefore, that only brothers and sisters who survived Wilhelmine would take as primary legatees. In other words, by providing for *substituted takers* for deceased brothers and sisters, he excluded deceased brothers and sisters as primary legatees and thereby included as primary legatees only Wilhelmine's brothers and sisters who survived her. We so hold.

The second question on this appeal is whether an adopted child of testator's granddaughter takes a share of Wilhelmine's trust estate as a descendant of Wil-

helmine's sister and the sister's daughter, both of whom were deceased at the time of Wilhelmine's death. Nellie B. Loeb, testator's daughter, died in 1934. One of her daughters, Lilly M. Berg, died in 1939. In 1918 Sydney L. Berg and his wife Lilly M. Berg lawfully adopted a child, then 2 years and 11 months old, to be, and who is, known as William Henry Berg. He is a party to this action and, under our construction of the language in paragraph 1 of the third codicil, claims a one-twentieth share of the trust estate. Testator's death in 1913 preceded the adoption of William H. Berg by some five years.

Appellants on this branch of the case are Aimee Magnus Flanigan, testator's granddaughter; Lilly Magnus Blabon and Emily Magnus Potter, testator's great-granddaughters; and Michael Richard Conklin, a minor, testator's great, great-grandson. These appellants contend that William Henry Berg takes nothing under the will of Adolphus Busch.

In approaching the question posed we are aware of the fact that the very language we are to construe is a portion of that which we have interpolated to effectuate what we have found to have been testator's intent. Under the circumstances, however, this fact gives us no concern for the reason that all of the appellants on this aspect of the case contend that the part of the trial court's decree which dealt with the constructional problem heretofore disposed of, should be affirmed. Consequently the last-named appellants must concede that we may construe the interpolated language just as though testator had actually used it in his will.

In brief, the facts are that testator's daughter Nellie B. Loeb, and her daughter Lilly M. Berg, both predeceased Wilhelmine, the life beneficiary of the trust estate, and that William H. Berg, the adopted son and the only child of Lilly M. Berg (and Sydney L. Berg, her husband) was adopted five years subsequent to testator's death. The question is whether testator intended that William H. Berg share in Wilhelmine's trust as a descendant of testator's daughter and granddaughter. We have held heretofore that testator intended that the then living "descendants" of his children who did not survive Wilhelmine would share in her trust per stirpes. Was William H. Berg a "descendant" (within the meaning of the will) of Nellie Loeb, testator's daughter, and of his adoptive mother, Lilly M. Berg, so that he takes the share of Wilhelmine's trust which his adoptive mother would have taken if she had survived Wilhelmine?

■ We are of the opinion that the recent case of Hayes v. St. Louis Union Trust Co., Mo., 280 S.W.2d 649, 651, and since the submission of the instant case, is decisive of the question and requires the conclusion that William H. Berg takes a proportionate share of Wilhelmine's trust estate.

In Hayes, the testator executed his will in 1915 and died in 1919. Testator's son, J. J. Hayes, and his wife adopted a daughter in December 1921, and thereafter J. J. Hayes had a son born of lawful wedlock. Testator's son died in 1952. The son's adopted daughter later had a child, Michael Stubbs. Testator left his property in trust for the benefit of his eight children. The trust was to terminate at the death of testator's last surviving child.

The questions involved were whether the trustees should pay a share of the income only to the son of testator's son born in lawful wedlock, or equally to that son and the adopted daughter, and what interest, if any, the son (Michael Stubbs) of the adopted daughter, had in the estate.

In Hayes, the first clause of the will construed by the court was: " 'All the rest and residue of my estate, real, personal and mixed, and wheresoever situated, left after satisfying the foregoing provisions of this will, I give, devise and bequeath to the St. Louis Union Trust Company and my daughter, Florence Agnes Hayes, in the City of St. Louis, Missouri, as joint trustees, in trust, for the equal and pro rata benefit of my eight children now living, or their heirs and survivors, respectively, * * *.' "

Concerning this clause, the court said: "In examining the will, we note that in the forepart of Section Three the testator expressed in general terms what disposition should be made of his property. Note that the property was devised to the trustees for the benefit of his eight children then living or *'their heirs and survivors.'* (Emphasis ours.) Clearly the adopted daughter in question comes within the language so expressed. An adopted child is an heir of his adoptive parents. The will expressly says 'their heirs' meaning thereby the heirs of testator's children which includes the adopted daughter of Joseph Jerome Hayes. Brock v. Dorman, 339 Mo. 611, 98 S.W.2d 672, loc. cit. 674, 675 (3, 4)."

The next clause separately considered was: " 'Said net income shall be divided and distributed in equal shares, *per stirpes,* among my surviving children and the descendants of any deceased child or children of mine.' " This court said concerning that clause: *"Under that language, the adopted child was included.* At the time the will was executed, an adopted child under the Missouri law was a descendant of its adoptive parent. In re Cupples' Estate, 272 Mo. 465, 199 S.W. 556, loc. cit. 558 (10); Williams v. Rollins, 271 Mo. 150, 195 S.W. 1009; Bernero v. Goodwin, 267 Mo. 427, 184 S.W. 74. [Italics the present writer's.]

"The testator in his will by the language above set forth in effect said that the share of the income of his son Joseph Jerome, after the son's death, should be paid to the son's descendants which included the adopted child, until *his or her share* of the principal shall have been distributed to *him or her.*" Later in the opinion the court said, "We have interpreted this will according to the law as it was when the will was executed [1915]."

Thus it appears that a clause similar, in so far as the use of the word "descendants" is concerned, to the clause in the instant will was, in Hayes, construed to mean that "descendants" of a deceased child of testator included the adopted son of testator's son. In both cases the wills were executed prior to 1917 when the prior statutes relating to adoptions were repealed and new sections enacted. Laws Missouri 1917, § 1677, p. 194. Prior to 1917 and at the time of the execution of both the Hayes and the Busch wills, RSMo 1899 § 5248, RSMo 1909 § 1673, was in force and effect. *In both cases the testator died prior to the times of the respective adoptions.*

In Hayes, the clause relating to the distribution of the corpus of the trust estate was: " '[At the death of my last surviving child, the] trust estate shall be divided in *equal shares* among my grandchildren then living and the descendants of any deceased grandchild who may leave descendants then living, such descendants of any deceased grandchild taking the share which his, her or their said deceased parent would have taken if living, * * *.' " Concerning the foregoing clause, this court said: "In the final part of Section Three, the testator directed that the trust shall continue until the death of the last surviving child and in so far as material to this case, the will provided that after the death of the last child, the 'trust estate shall be divided in *equal shares* among my grandchildren then living and the descendants of any deceased grandchild who may leave descendants then living, * * * and in such final distribution no advancements made to any child of mine shall be charged against *his or her descendants.'* (Emphasis ours.) Special attention should be given to the fact that the testator, in the last part of the above-quoted provision of the will, said 'his or her descendants' meaning his children's descendants.

"Plaintiffs-respondents on this appeal rely greatly on the words 'grandchildren' and 'grandchild' and argue that the use of those words by the testator indicated that he meant to include as beneficiaries of the will only those who were of the testator's own blood. To do this it would be necessary to say by the designation 'grandchildren' in the last part of Section Three of the will that the testator meant to say 'lineal descendants' in other parts of the will when, in fact, the testator said 'descendants.' It would also require an interpretation of the word 'heirs' as employed by the testator to mean 'heirs of the body.' The testator

employed the words 'descendant' or 'descendants' many times in the body of the will and not once did he preface them with 'lineal.' Not only that, not once did he refer to the descendants as 'my descendants' but always as the descendants of his children. It will also be noted that in the codicils the word 'lineal' was not used with the words 'descendant' or 'descendants.' In the case of Trautz v. Lemp, supra, [329 Mo. 580] 46 S.W.2d [135] loc. cit. 140, 141 (8–15), cited by plaintiffs, this court en banc pointed out that the testator whose will was before the court for interpretation employed the words *'lineal* descendants.' (Emphasis ours.) The court also said, 46 S.W.2d loc. cit. 139, that a testator is presumed to know the law. Had the testator in the case now before us intended to limit his estate to his lineal descendants, he could have employed the word 'lineal' or have limited the remainder after the life estate to his children and the heirs of the body. We must be governed by what the testator said in his will. Brock v. Dorman, supra, 98 S.W.2d loc. cit. 675(5).

"A rule of construction frequently applied is that 'the intention of the testator is to be determined from the will as a whole.' 69 C.J. 104, Sec. 1153. Applying that rule to the will of Joseph M. Hayes and giving the ordinary legal meaning to the terms used in all parts of the will, we have concluded that the adopted child of Joseph Jerome Hayes is included. For such a construction, we need not limit the meaning of the words 'descendants' or 'heirs.' The word 'grandchildren' may include an adopted child. In this case, the testator, in stating the general purposes of his will, by using the word 'heirs,' included the adopted child. To be consistent, therefore, we must hold that the word 'grandchildren' included the adopted child in question. In re Levy's Estate, 138 Misc. 670, 245 N.Y.S. 710; Batchelder v. Walworth, 85 Vt. 322, 82 A. 7, loc. cit. 10(3), 37 L.R.A.,N.S., 849. In Dulfon v. Keasbey, 111 N.J.Eq. 223, 162 A. 102, the court held the word 'grandchildren' included an adopted child of testator's son, but the court held that testator limited the legatees to his blood kin by the use of the words

'lawful issue.' The same is true of the case of Fidelity Union Trust Co. v. Hall, 125 N.J.Eq. 419, 6 A.2d 124.

"We have interpreted this will according to the law as it was when the will was executed."

It is true that in the Hayes case, while making it clear that the court had interpreted the will according to the law as it was when the will was executed, nevertheless stated that if it was taken into consideration that the testator in the Hayes case added two codicils after the 1917 Adoption Act, and if the will was to be interpreted in accordance with the 1917 Act, the result would be the same, namely, that the adopted child would be included as a descendant as that term was used in the will.

The importance of the Hayes case, and the reason, as we have said heretofore, that it is decisive of this case, is that it flatly held that under the law as it existed when the Adolphus Busch will and the codicils thereto were executed, "descendants" of testator's children included adopted children of testator's children who would take under a will. And it appears from a careful examination of the opinion that this was the conclusion of this division independent of and without any essential effect of the previous clause in which the testator in general language had indicated that his property was put in trust for the benefit of his children "or their heirs and survivors." And, furthermore, it clearly appears that against the contention in Hayes that the use of the words "grandchildren" and "grandchild" in the direction as to the distribution of the corpus indicated that testator meant to include as beneficiaries only those who were of testator's own blood, the court pointed out that if the testator had intended to so restrict the meaning of "descendants" he would have said "lineal descendants", and if he had meant to so restrict the word "heirs" he would have said "heirs of the body."

A re-examination of the briefs filed in Hayes demonstrates that generally speaking the same Missouri authorities relied on by

appellants here were urged and relied on by respondent in Hayes. Thus, those cases, including Leeper v. Leeper, 347 Mo. 442, 147 S.W.2d 660, 133 A.L.R. 586; Crawford v. Arends, 351 Mo. 1100, 176 S.W.2d 1; Hockaday v. Lynn, 200 Mo. 456, 98 S.W. 585, 8 L.R.A.,N.S., 117; Melek v. Curators of University of Missouri, 213 Mo.App. 572, 250 S.W. 614; and Grundmann v. Wilde, 346 Mo. 327, 141 S.W.2d 778, were considered by this court in Hayes although none of the above-listed cases were mentioned in that opinion. And it was contended in Hayes as it is contended in the instant case that "descendants" in its usual connotation means "lineal descendants" and that even though, under the law as construed by the courts when the wills were executed, an adopted child was a descendant for the purpose of inheriting *from* an adoptive parent, he was not a descendant for the purpose of inheriting *through* his adoptive parent or *through* the ancestors of the adoptive parents. This court, in effect, rejected that argument in Hayes and by so doing left the last-mentioned cases and others to be construed and the effect of them to be determined in the light of the Hayes opinion.

But it is true that: "'In the matter of construing the rights of an adopted child to take under a will, it should be borne in mind that it is not a question of the right of an adopted child to inherit, but simply a question of the testator's intention with respect to those who are to share in his estate.'" Brock v. Dorman, 339 Mo. 611, 614, 98 S.W.2d 672, 674. And each will construction case must of necessity be determined upon its own facts and the particular will construed so as to effectuate the testator's intent. Thus, if it be supposed (contrary to our analysis of that opinion) that Hayes is not decisive of the instant question because of language in the Hayes will not found in the instant will and because other circumstances were present with respect to the time of the execution of the codicils in the Hayes case, still it cannot be gainsaid that the rationale of the Hayes opinion when applied to the facts and the language in question in the

present case effectively controls our ultimate conclusion in the instant case. For, at the very least, Hayes demonstrates that in will construction this court will construe "descendants of brothers and sisters" to include an adopted child of a sister's daughter whether or not that language was used in a will executed prior to the enactment of the 1917 Adoption Act, *unless* from the whole will testator's contrary intention appears.

We find nothing in the instant will to indicate that testator intended to exclude adopted children from the class which we have found testator designated as descendants of his daughter's deceased brothers and sisters. On the contrary, under testator's will the primary legatees of Wilhelmine's trust who survived Wilhelmine take their respective shares outright and can dispose of such shares as they see fit. Thus, for example, if Lilly M. Berg, testator's granddaughter (the adoptive mother of William H. Berg), had survived Wilhelmine, she admittedly would have taken a share of Wilhelmine's trust unrestricted as to future disposition, and could have bequeathed by her will her share to her adopted son. (As a matter of fact Lilly's will which was in evidence disclosed that any share of Wilhelmine's trust she might have received would have gone under that will to her husband and her adopted son.) So that it would not seem likely that testator had in mind excluding from "descendants of his daughter" the adopted son of Nellie's daughter. And, further, testator specifically provided that portions of his estate would go to strangers to his blood in that the surviving husbands of four of his daughters were to share in the distribution of the trusts for their respective wives. Thus, testator clearly demonstrated that he did not intend that only his blood relatives would take under his will.

Finding nothing in the testator's will indicating an intention to exclude William H. Berg from taking the share of Wilhelmine's trust which his adoptive mother would have taken had she survived Wilhelmine, we hold, on the authority of Hayes v. St. Louis Union Trust Co., supra, that William H.

Berg takes a proper proportionate share under the will of Adolphus Busch.

Matters, other than the two questions hereinbefore determined, contained in the trial court's decree are not before us on this appeal and it would appear, therefore, that the parties are in agreement that such other portions of the decree are proper and correct. Inasmuch as we have reached the same ultimate conclusions on the two litigated aspects of the case as those reached by the trial court, it follows that the decretal portion of the trial court's judgment and decree should be and is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.