The **FIRST NATIONAL BANK OF KANSAS CITY**, Successor Trustee Under the Last Will and Testament of Oliver H. Dean, Deceased, (Mason L. Dean and Alice Dean Swobe, Individually and as Trustees of the Trust Created by the Last Will and Testament of Oliver H. Dean, Deceased), Plaintiffs-Respondents,

v.

Helen Dean (Fennelly) **SULLIVAN** and John Joseph Fennelly, Defendants-Respondents,

Deane Maitland (Green) Anderson, Defendant-Appellant,

The First National Bank of Kansas City as Executor of the Estate of Mason L. Dean, Deceased, and the First National Bank of Kansas City and Barret S. Heddens, Jr., Cotrustees of a Trust Created by Mason L. Dean, Intervenors-Defendants-Appellants.

No. 51116.

Supreme Court of Missouri,

Division No. 1.

Sept. 13, 1965.

Motions for Rehearing or to Transfer to Court En Banc Denied Oct. 11, 1965.

Menefee D. Blackwell, Daniel C. Weary, William W. LaRue, Kansas City, Caldwell, Blackwell, Sanders & Matheny, Kansas City, of counsel, for appellants, First Nat. Bank et al.

J. Robertson Clagett, Kemp, Koontz, Clagett & Norquist, Kansas City, for appellant Deane Green Anderson.

John B. Gage, William H. Leedy, Kenneth V. Butler, Kansas City, Gage, Hodges, Park & Kreamer, Kansas City, of counsel, for respondents, Helen Dean Sullivan and John Joseph Fennelly.

HOUSER, Commissioner.

This is an action by First National Bank of Kansas City, as trustee of the trusts created by the last will and testament of Oliver H. Dean, deceased, to construe the will and for directions with respect to the distribution of the property in the portion of the trust estates which have terminated, and for incidental relief. Helen Dean Fennelly Sullivan, John Joseph Fennelly and Deane Maitland Green Anderson were named defendants. First National intervened as a party defendant in its capacity as Executor of the Estate of Mason L. Dean, deceased, and First National and Barret S. Heddens, Jr., intervened as cotrustees of a trust created by Mason L. Dean. The circuit court construed the will and, after unavailing motions for new trial, Deane Anderson, First National as executor, and First National and Heddens as cotrustees, appealed.

Title to several parcels of real estate is involved, and it affirmatively appears that the amount in dispute is in excess of $15,000, so we have jurisdiction. Constitution, Art. V, § 3; §§ 477.040, V.A.M.S.

Oliver H. Dean, born December 7, 1844, died testate on January 3, 1928. His will was dated December 26, 1923. He was married to Frances Mason. They were divorced in 1912. A practicing lawyer in Kansas City from prior to 1875 until his death, he was senior partner in the law firm of Warner, Dean, Langworthy & Thompson. He left surviving only two children, Mason L. Dean and Alice Dean Green Swobe, and no descendant of any deceased child.

Mason L. Dean, born in 1880, died in 1962, leaving surviving him his wife Flora, now deceased, and only one child, Helen Dean Fennelly Sullivan, and no descendant of any deceased child. Helen was born in 1907. John Joseph Fennelly, born in 1930, is the only child of Helen. There are no descendants of a deceased child of Helen.

Alice Dean Green Swobe, born in 1876, died October 29, 1963. Married twice, she had two sons by her first marriage, both of whom predeceased her, the sons leaving no descendants. She was divorced from her first husband. She had no children by her second husband, who predeceased her. She was not survived by any natural born child or descendants of a deceased child, but she was survived by Deane Green Anderson (the widow of Alice's deceased second son), whom she adopted on July 30, 1953 in the Circuit Court of Jackson County. The adoptee was born September 14, 1910.

The last will and testament of Oliver H. Dean consisted of 14 articles. In the first four articles he directed the payment of debts and funeral expenses, bequeathed his lawbooks to a law school, and made specific bequests of $5,000 and $3,000 to a housekeeper and a servant. Article VI bequeathed certain personal property such as furniture, automobiles, etc., to his daughter Alice. The will created two trusts. By Article V he placed his residence property in trust for the benefit of his daughter Alice, with power in the trustees to sell the property and a direction to invest the proceeds and pay the income to Alice during her life, "and upon her death, I give, bequeath and devise the principal of said trust fund or said real property, if not sold as aforesaid, to my beloved grandsons, Dean Green and Alvah Sherman Green, Jr., in equal parts, or to the survivor of them, if either be then dead without issue then living, their or said survivor's heirs and assigns forever; if either or both of my said grandsons be dead, at the death of my said daughter, then to said surviving grandson and the issue of said grandson, then living, per stirpes and not per capita, or the issue of both, then living, per stirpes and not per capita, as the case may be absolutely and in fee; if my said grandsons should both be dead at the death of my said daughter, without issue then living, then to my heirs at law, per stirpes and not per capita, their heirs and assigns forever." At Alice's death this trust was carried on the books of the trustee at approximately $4500. By Article VII he created a residual trust, with provisions for holding, investing and paying the net income from the remainder of his property, as provided in the will, subject to the provision of Article XI. Article VIII provided $10,000 per year each for his son Mason and his daughter Alice for their lives, the balance of the net income to be added to the corpus of the trust fund. Article IX provided as follows: "Upon the death of my said daughter, Alice Dean Green, I give, bequeath and devise an undivided one-half of said trust fund or estate or the entire remainder thereof, if an undivided one-half thereof shall have already vested, absolutely, in my beneficiary or beneficiaries under the terms of this my last will, to the heirs of the body of my said daughter, per stirpes and not per capita, their heirs and assigns forever, or if my said daughter have no heirs of her body at her death, then to my heirs at law, per stirpes and not per capita, their heirs and assigns forever." Article X directed the trustees at the death of Mason L. Dean to pay out of the net income of the trust estate to testator's granddaughter Helen Dean, daughter of Mason, $10,000 per year

for life, the balance of the net income to be added to the corpus of the trust fund. Article X further provided: "Upon the death of my said granddaughter, Helen Dean, I give, bequeath and devise an undivided one-half of said trust fund or estate or the entire remainder thereof, if an undivided one-half thereof shall have already vested, absolutely, by reason of the death of my said daughter, Alice Dean Green, under the terms of this my last will, to the heirs of the body of my said granddaughter, Helen Dean, per stirpes and not per capita, their heirs and assigns forever; if my said granddaughter have no heirs of her body at her death, then to my grandsons, Dean Green and Alvah Sherman Green, Jr., in equal parts, or to the survivor of my said grandsons should either be then dead without issue then living, their or said survivor's heirs and assigns forever; if either or both of my said grandsons be dead at the death of my said granddaughter, then to said surviving grandson and the issue of said deceased grandson, then living, per stirpes and not per capita, or *or* the issue of both then living, per stirpes and not per capita, as the case may be, absolutely and in fee; but in case my said granddaughter dies without issue living at her death and both of my said grandsons be then dead without issue then living, then to my heirs at law, per stirpes and not per capita, their heirs and assigns forever." The one half of the corpus of the trust created by Articles VII, VIII, IX and X as to which the trust terminated upon the death of Alice on October 29, 1963 was carried on the books of the trustee at $263,772.39, as of that date, including an undivided one-half interest in several tracts of real estate. Article XI directed the trustees to pay the amounts due under the will upon the personal receipt of the beneficiaries, or if any of them be minors, upon the personal receipts of their guardians or curators, "without any power whatever in any one of said beneficiaries to sell, transfer, assign, pledge, mortgage or create any lien or encumbrance on said net income or any part thereof or

otherwise dispose of the same by way of anticipation prior to the actual payment or payments thereof to him or her nor shall any part of said net income be liable in any manner whatever for the present, past or future debts or liabilities of any one of said beneficiaries prior to the actual payment of said net income to him or her nor shall any part of said trust fund or estate be liable in any manner whatever for the present, past or future debts or liabilities of any of the beneficiaries of this my last will until said part of said trust fund or estate shall go to and vest absolutely in said beneficiary or beneficiaries and said trust, as to said part of said trust fund or estate, terminates, as provided in this will. The provisions of this Article shall also apply to any net income that may be paid to my said daughter, Alice Dean Green, from the proceeds of the sale of my home, as provided in Article Five of this my will." Article XII provided that whenever any portion of the trust fund or estate shall absolutely vest in any of the beneficiaries, as provided for in the will, said trust shall terminate as to that portion and when the whole of the trust fund or estate shall absolutely vest in them or any of them, as provided in the will, the trust shall wholly cease and terminate. Article XIII provided for the appointment of a successor trustee or trustees in the event of failure, refusal or inability of the named individuals to act. Pursuant to this authority First National Bank of Kansas City was appointed successor trustee under the last will and testament of Oliver H. Dean, deceased.

The property in controversy to be distributed as a result of the death of Alice, which terminated the trusts created in her favor, is as follows: In the first trust, created by Article V, property having a total value of not less than $4500; in the second trust, created by Articles VII, VIII, IX and X, one half of the corpus of a trust estate having a total value of not less than $263,772.39 (only one half of the total value of all the property in the second trust is in controversy since the other half will re-

main in trust under the provisions of Article X until the death of Helen).

As to the first trust the court awarded appellant Deane Green Anderson, hereinafter "Deane," one half and awarded Helen one half, on the theory that Deane and Helen are testator's "heirs at law," as that term is used in Article V. Deane did not appeal from this ruling. Mason L. Dean's executer and trustees appealed from this ruling, claiming that testator's heirs at law should have been ascertained at the death of testator, not at the death of the life tenant Alice, and therefore testator's heirs at law were Alice and Mason, not Deane and Helen. The bank as executor, and the bank and Heddens as cotrustees, therefore, ask for one half of the property in the first trust, on this distribution.

As to the second trust, Deane was awarded one half and Helen was awarded one half, on the theory that Deane and Helen are testator's "heirs at law," and that Deane is not an "heir of the body" of Alice, as those terms are used in Article IX. Deane appealed from this ruling, claiming that although Deane is an adopted child of Alice she is an "heir of the body" of Alice under the law as it existed at the time of Alice's death, and that as such she is entitled to *all* of the property to be distributed as a result of the termination of the second trust. Helen and her son John oppose Deane's claim to all of the portion of the second trust to be distributed, asserting that the decree is correct and should be affirmed. The bank as executor and the bank and Heddens as cotrustees appealed from the decree awarding Deane one half and Helen one half, making claim to one half of the property in the second trust on the same basis that they claimed one half of the property in the first trust, supra.

The first question is whether the remainder to testator's heirs at law [1] vested at the time of testator's death in 1928 or at the time of Alice's death in 1963. (If it vested in 1928 his heirs at law were his daughter Alice and his son Mason, and Mason's executor and trustees would at the termination of Alice's life estate take a one half interest in the one half of the corpus of the trust estate to be distributed; if it vested in 1963 his heirs at law were Alice's adopted daughter and testator's granddaughter Helen, and Mason's executor and trustees would take nothing.)

■ Mason's executor and cotrustees contend that testator's lawful heirs are to be ascertained as of the time of testator's death, under the general rule that unless the testator has clearly manifested a contrary intention the persons who take under his will are to be determined as of the date of his death, and the remainder vests at that time. This is undoubtedly the rule [2] ; but it is not a rule of substantive law. It is a rule of auxiliary construction, to be used only as an aid in determining the intent of the testator as expressed in his will, and where that intent may be clearly ascertained from the will itself, rules of construction are of little value, Commerce Trust Co. v. Weed, Mo.Sup., 318 S.W.2d 289, 1. c. 296 [3] and "never should be used to defeat what, from the whole will, appears with reasonable certainty to have been his intention." Heard v. Read, 169 Mass. 216, 47 N.E. 778.

■ Whether the members of the class "heirs at law" are to be ascertained as of the date of testator's death or at the life tenant's death depends upon the intention of the testator, which is to be determined by a consideration of the will as a whole, not giving undue preference to any particular

1. " * * * if my said daughter have no heirs of her body at her death, then to my heirs at law, per stirpes and not per capita, their heirs and assigns forever." (Article IX.)

2. St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S.W.2d 578; Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947; Walters v. Sisler, Mo. Sup., 371 S.W.2d 187; 57 Am.Jur. Wills § 1279.

clause, but read from its four corners. Commerce Trust Co. v. Weed, supra, 318 S.W.2d 1. c. 294.

Testator, an experienced and successful lawyer, was 79 years old at the time he executed his will. At that time (1923) he had two living children and there were no issue of deceased children of testator. His daughter Alice, 47 years old, estranged from her husband, was living in testator's home in Kansas City. Alice's sons, 12 and 15 years old, were then living. Testator's son Mason had a wife, Flora, and a daughter, Helen, who was 16 years old. Testator had been divorced in 1912. In this situation testator's heirs apparent were Alice and Mason, and they were his first concern. Two trusts were set up in his will. The first trust (Article V) was a comparatively small one. The corpus consisted of the family home. Alice was the named beneficiary for life, with remainders to testator's grandsons by name, or the survivor or their issue, but if his grandsons should both be dead at Alice's death, without issue then living, to testator's heirs at law. The corpus of his second trust was substantial, consisting of all of the residue of his property. From the net income annual payments of $10,000 were to be paid to Alice and to Mason for life. Upon the death of Alice the trust as to Alice was to terminate and one half of the trust estate was to be distributed under the terms of Article IX to the heirs of the body of Alice, in default of which then to testator's heirs at law. Upon the death of Mason testator created a successive life estate in Helen, in a $10,000 annuity. Upon the death of Helen the trust as to Helen was to terminate and one half of the trust estate was to be distributed under the terms of Article X, first to Helen's bodily heirs, in default of which then to testator's named grandsons (the two sons of Alice) or the survivor, or their issue, but if Helen should die without issue living at her death and both the named grandsons should be dead without issue living then that portion of the trust estate was to go to testator's heirs at law.

■ Reading and considering the will from its four corners, and obeying the mandate to "have due regard to the directions of the will, and the true intent and meaning of the testator," § 474.430, V.A.M.S., we are of the opinion that the will clearly and without ambiguity discloses an intention that the remainder to testator's heirs at law in default of bodily heirs of Alice vest at the time of Alice's death, and that testator's heirs at law who were to succeed to that portion of the trust estate be ascertained and determined (i. e., that the members of the class be *identified*) as of the date of Alice's death and not as of the date of testator's death.

■ At the time he made his will testator obviously had in mind all of the persons who would have taken his estate in case of intestacy. While each of these persons was specifically named he did not give to any of them immediate title to any part of his estate in present enjoyment. Instead, for the lives of his children and granddaughter Helen testator provided $10,000 annuities. This is persuasive of the conclusion that testator did not intend to leave his estate to the persons who would be his heirs at law at the time of his death. Hay v. Hay, 317 Mich. 370, 26 N.W.2d 908 [1], l. c. 911, item (1); [2].

The arrangements testator made for the disposition of his property envisioned a time period which he might reasonably have expected to continue for many years. The identity of the ultimate beneficiaries was uncertain in the mind of testator, as indicated by the many contingencies for which he made provision. He could expect each generation to outlive the next preceding generation in the normal course of events. In naming his heirs at law as the final takers, in default of all other contingencies, testator was looking far into the future. At the time he made his will in 1923 testator knew that the remainder to his heirs at law, if it ever vested, would likely vest "many years in the future and that marriages, deaths, births and perhaps adoptions

would likely occur before the termination date [of the trusts], which events would change the personnel of the group that would eventually make up the class designated as ['heirs at law'].'' Commerce Trust Co. v. Weed, supra, 318 S.W.2d, l. c. 298. (Our brackets.) Testator's apparent and understandable uncertainty as to the identity of the persons who would make up the class is hardly consistent with an intention on testator's part to have the class "my heirs at law" determined at the very moment as of which a will speaks, namely, at the time of the death of the testator.

■ That testator did not intend that Alice be one of the heirs at law follows not only from the general plan of the will but also from specific provisions from which that intent may be gleaned. In providing the $10,000 annuity for Alice for life, plus the life estate in her favor created by Article V, testator apparently considered that he had made ample provision for her. "Where the will has provided for a person in his lifetime who would be an heir if the heirs should be determined as of the time of the death of the testator, and shows that no further provision was intended for that person, that has been held sufficient to indicate that the heirs were to be determined as of a later time when he would no longer be an heir [citing 6 Massachusetts cases]." Tyler v. City Bank Farmers Trust Co., 314 Mass. 528, 50 N.E.2d 778, 781 [9].

In 1923 when the will was made testator's heirs apparent were Alice and Mason. If testator intended that the remainder in Alice vest at the time of his death, as Mason's executor and cotrustees contend, then and in that event one half of the trust estate would have vested at testator's death in a person [Alice] "who could never, by any possibility, live to enjoy [her] inheritance, since the death of [Alice] was a condition precedent to the distribution of the remainder." Commerce Trust Co. v. Weed, supra, 318 S.W.2d, l.c. 295. As noted there, while not legally impossible [3] such a

disposition is rare, and it would be awkward and unreasonable to attribute to an astute, experienced and capable lawyer such as testator an intention to give to his daughter Alice and his son Mason residuary gifts which neither of them could enjoy personally. As indicated by certain provisions of his will to which we now allude we do not believe that it was so intended. By Article X, upon the death of Helen, testator disposed of an undivided one half of the trust estate "or the entire remainder thereof, *if an undivided one-half thereof shall have already vested, absolutely, by reason of the death of my said daughter, Alice Dean Green, under the terms of this my last will, * * *.*" In Article IX, upon the death of Alice testator disposed of an undivided one half of the trust estate "or the entire remainder thereof, *if an undivided one-half thereof shall have already vested, absolutely, in my beneficiary or beneficiaries under the terms of this my last will, * * *.*" (Our italics.) By Article XII testator provided that "Whenever any portion of said trust fund or estate shall absolutely vest in any of the beneficiaries of this my last will, as hereinabove provided, then said trust shall terminate as to said portion thereof and when the whole of said trust fund or estate shall absolutely vest in them or any of them, as hereinabove provided, the said trust shall wholly cease and terminate." These provisions constitute a clear, unequivocal recognition and expression by testator that the remainder was to vest at the time of the death of the life tenant (at the termination of the trust) and not at the time of testator's death.

■ As indicated in Commerce Trust Co. v. Weed, supra, 318 S.W.2d, l.c. 295, the only logical reason for testator to have the remainder vest at his death would have been to enable the life tenant to convey or devise her interest in it, but this would be inconsistent with testator's denial to his beneficiaries, including Alice generally as to the second trust and specifically as to the

3. Evans v. Rankin, 329 Mo. 411, 44 S.W.2d 644.

first trust, of the power to sell, transfer, assign, pledge, mortgage or create any lien on the net income, or anticipate payments for debts, and providing that *no part of the trust estate* should be liable for the beneficiary's debts "until said part of said trust fund or estate shall go to and vest absolutely in said beneficiary or beneficiaries and said trust, as to said part of said trust fund or estate, terminates, as provided in this will." Article XI. The fact that spendthrift provisions were attached to the annuities to both his children is significant and tends to show that testator did not intend that his children acquire at his death a vested remainder interest that they could alienate and that could be taken by their creditors. Hay v. Hay, 317 Mich. 370, 26 N.W.2d 908 [1], item (4); [2]; Tyler v. City Bank Farmers Trust Co., 314 Mass. 528, 50 N.E. 2d 778; Taylor v. Albree, 317 Mass. 57, 56 N.E.2d 904 [7], l.c. 908.

Another circumstance which supports our conclusion is the fact that the will fully empowered the trustees "to pay taxes, lease for short or long terms, buy, sell and convey or exchange, borrow money, mortgage and do any and all things, necessary or proper in the management, control and preservation of said trust fund or estate, and any increase thereof, as to them shall from time to time seem best." Hay v. Hay, supra, 26 N.W.2d [1], l. c. 911, item (5); [2].

All things considered, this will evidences an intention that the remainder to testator's heirs at law (in default of bodily heirs) vest at the time of the termination of the trust and that the class "my heirs at law" be ascertained and determined as of that date, and not at the time of testator's death. Accordingly, Mason's executor and trustees have no interest in the current distribution.

In Thomas v. Higginbotham, Mo.Sup., 318 S.W.2d 234, relied upon by Deane, it was held that a devise to a person for life and that at his death the estate vest absolutely in *his* heirs at law, the latter term should be construed according to the statute of descent and distribution in effect when the devise became effective upon the death of the life tenant, and not that in effect at the date of the making of the will. It was argued but the court found against the contention that the plan of testator's will demonstrated a desire that the land go to *testator's* descendants when the life estate terminated. There was no intent expressed in the will bearing on the question except the words of the grant. There was no provision for a preceding remainder to heirs of the body of a child or testator. The court repeated that the question was "the testator's intention with respect to those who are to share in his estate after the death of the second tenant for life," 318 S.W.2d l. c. 239 [6]; that " 'each will construction case must of necessity be determined upon its own facts and the particular will construed so as to effectuate the testator's intent.' " For the reasons given we have found in the case here for review a different intention on the part of testator from that found in Higginbotham.

The next question is whether Deane, the adopted child of Alice, is an "heir of the body" of Alice within the meaning of the language of Article X granting the remainder "to the heirs of the body of my said daughter, per stirpes and not per capital, their heirs and assigns forever." Deane claims that because the remainder was contingent, not vested, at the time of testator's death in 1928 it follows that the statute controlling her rights of inheritance as an adopted person must be the statute in force at the time of the vesting of the remainder in 1963.[4] While the remainders provided

4. In 1963 § 453.090, V.A.M.S., unchanged since its first enactment, Laws 1947, Vol. II, p. 213, provided that an adopted person is capable of inheriting from and taking through his parent by adoption

property expressly limited to heirs of the body of such parent by adoption. In 1923, when the will was made, and in 1928, when testator died, RSMo 1919, § 1101, unchanged since its first enact-

for in Article IX were contingent and did not vest until October 29, 1963, the date of the death of the life tenant, Alice, it does not necessarily follow that the statute in force on that date, § 453.090, V.A.M.S., regulating inheritance rights of adopted persons as heirs of the body, governs Deane's rights in this case. In construing the rights of an adopted child to take under a will " '* * * *it is* not a question of the right of an adopted child to inherit, but *simply a question of the testator's intention with respect to those who are to share in his estate.'*" (Our emphasis.) Commerce Trust Co. v. Weed, supra, 318 S.W.2d, l. c. 298; Brock v. Dorman, 339 Mo. 611, 98 S.W.2d 672, 674 [1]. A testator's intention with respect to who shall be included or excluded from a designated class may be altogether different from that which the law provides. A different intention will be respected, as long as it does not violate public policy. It is fundamental that it is testator's intention at the time of the execution of the instrument—*as of the time of the creation of the trust*—that we seek to determine.

■ While testator intended that his heirs at law be ascertained and determined, i. e., identified, as of the date of Alice's death (when the trust terminated), we do not find that testator intended that the qualifications of those who were to make up the class "heirs of the body of my said daughter" were to be judged according to the laws in effect at the time of Alice's death. On the contrary, we believe that testator intended that their qualifications be judged according to the laws in effect at the time the will was executed; that testator used the terms "heirs of the body" and "heirs at law" in Article IX and elsewhere in the will according to the meaning and effect the law attached to them at the time he used them, and that he wanted them so interpreted at the time these classes were to be ascertained and determined.[5] This is in accordance with the general rule that whether an adopted child is embraced within the meaning of a described class of beneficiaries in a will is governed by the law in force at the time the will or other instrument was executed. Hayes v. St. Louis Union Trust Co., Mo.Sup., 280 S.W. 2d 649, 655 [10]; Wyeth v. Merchant, D.C. Mo., 34 F.Supp. 785, aff. 8 Cir., 120 F.2d 242; Leeper v. Leeper, 347 Mo. 442, 147 S.W.2d 660 [1], 133 A.L.R. 586 (deed); 2 Am.Jur.2d Adoption § 92, p. 934, fn. 12. In the quest for testator's intention we consider the surrounding circumstances.

■ When the will was drawn in 1923 testator had a living son, a living daughter, two living grandsons by his daughter, and one living granddaughter by his son. There were no adopted persons in the family. Deane was then 13 years old, but there is nothing to indicate that testator knew her.

ment, Laws 1917, p. 194, provided the opposite, namely, that an adopted person was *not* capable of inheriting from and taking through his parent by adoption property expressly limited to the heirs of the body of such parent by adoption. Both in 1923 and 1928 an adopted person was capable of inheriting as an "heir."

5. This is the principal differentiating feature between this case and Commerce Trust Co. v. Weed, supra. In Weed testator intended that the qualifications of those who were to make up the class "lineal descendants" were to be judged according to the laws in effect on the date of the termination of the trust. 318 S.W. 2d, l.c. 298. The court found highly significant the will provision giving a remainder, in default of all other provisions, to testator's heirs at law "whoever they may be at the time of such termination, *according to the laws of the State of Missouri then in force*" (our emphasis). Other distinguishing factors present in Weed but absent here: (1) The adoption occurred a few days after the birth of the child, who grew up in the family and was well known to testator, who regarded her as his grandchild and had the same affection and regard for her that he had for his other grandchildren. (2) In making the primary dispositions of his property testator did not favor bloodline descendants exclusively, but included his daughter-in-law on an equal basis with his natural daughters.

She married into the family, becoming the wife of testator's grandson Alvah Sherman Green, Jr., apparently after 1923, because in that year Alvah Sherman was 12 years of age. Testator's daughter Alice was 47 years old, living apart from her husband. While unlikely, it was possible that she would bear more children. When testator undertook to write his will there were no adopted children before him to consider in disposing of his property. (Deane was adopted by Alice in 1953, 30 years after the will was executed, 25 years after testator's death.) Testator, however, must be presumed to have been aware of the fact that there might be adoptions in his family in the future, before the remainders vested.

In this family situation testator understandably expressed a strong feeling for members of his bloodline. Except for comparatively small specific bequests to household servants all of the named beneficiaries were members of his bloodline. No "in-laws" were made beneficiaries, or even mentioned. There was no reference to the rights of children who might thereafter be adopted. While not specifically excluding adoptees from the class "heirs at law" he preferred, in fact provided only for, members of his bloodline, down to the last remainder, in default of all other preferred dispositions.

With the knowledge that children might be adopted by his children or grandchildren, and with the intention that the membership of the class "my heirs at law" be ascertained and identified at Alice's death if she died without bodily heirs, testator chose language limiting the grant of the first remainder to the *heirs of the body of Alice,* in default of which he permitted the property to go to his *heirs at law.* In Article X the remainder after the termination of the life estate in Helen was likewise limited to the *heirs of the body of Helen,* but in the final catchall grant disposing of that portion of his estate in case all other preferred dispositions to those in his bloodline failed, testator gave his estate to his *heirs at law.* Under the statutes in force in 1923 a remainder to the heirs of the body of Alice would *exclude,* and a remainder to his heirs at law would *include,* adopted children.

It was not the intention of testator, in carving out the first remainder, to include adopted children. His use of the words "to the heirs of the body of my said daughter" underscores the implied exclusion. At the time this experienced lawyer wrote this will in 1923 the phrase "bodily heirs" was a well-established term which had acquired a peculiar and appropriate technical meaning in law. An heir of the body had a well-defined and fixed legal interpretation as an heir begotten of the body; a lineal descendant. It was not synonymous with the words "children," "issue" or "heirs." Prior to 1917, in the absence of any statute on the subject, it had been held that an adoptive child was not entitled, on the death of the adoptive parent, to take property limited to the "bodily heirs" of the adoptive parent. Clarkson v. Hatton, 143 Mo. 47, 44 S.W. 761, 39 L.R.A. 748. This is the general rule. 2 Am.Jur.2d Adoption § 92, p. 934, fn. 10. "An adopted child of the designated ancestor is not an heir of his body. Thus, unless a contrary intent of the conveyor is found from additional language or circumstances, an adopted child is not included in a limitation to the 'heirs of the body' of a designated person." Restatement of the Law of Property § 306, par. g. "A foster child, being a stranger to the blood, is the antithesis of an heir of the body." Davis v. Davis, 219 Ark. 623, 243 S.W.2d 739, 740. In 1917 the General Assembly enacted a law specifically declaring that "neither said adopted child nor said parents by adoption shall be capable of inheriting from or taking through each other property expressly limited to heirs of the body of such child or parent by adoption." Laws 1917, p. 194. When testator wrote his will in 1923 this law had been on the books six years. We presume that he used the limited wording "heirs of the body of my said daughter" with this statute in mind, knowing that the term "heirs of the body" was much more limited in scope than "heirs at law" and

under then-existing law was limited to blood relationship. In limiting his property as he did testator prophetically anticipated and acted upon the admonition of the court en banc in St. Louis Union Trust Co. v. Hill (1934), 336 Mo. 17, 76 S.W.2d 685, l. c. 689 [7]: "If he did not want an adopted child to have any of his property he could have easily provided for such a contingency in his will by *expressly limiting* his property to go to the bodily heirs of his son, but he did not do so." And see St. Louis Union Trust Co. v. Greenough, Mo.Sup., 282 S.W. 2d 474, 482. We presume that he knew in 1923 that "heirs at law" included adopted children. St. Louis Union Trust Co. v. Hill, supra. RSMo 1919 § 1101 provided that an adopted child "shall be capable of inheriting from, and as the child of said [adoptive] parents as fully as though born to them in lawful wedlock." In selecting the terminology employed in his last will and testament we will assume that testator chose words with discrimination and care. By making the broad class "my heirs at law" the final takers we will not attribute to him an intent to discriminate against adopted children. If he had wished to exclude adopted children entirely from his bounty it would have been a simple thing to insert a declaration to that effect.

■ Our conclusion is that the will bespeaks an intention and preference, following termination of the trust, to distribute the portion of the trust estate in question to his descendants in the family blood stream, to the exclusion of adopted persons, if Alice left heirs of her body; but if Alice died without bodily heirs, it was his intention to open up the distribution to the broader and more inclusive class "heirs at law" and to permit all of his heirs at law qualifying as such at the termination of the trust to participate, including adopted children of Alice. Deane is not an heir of the body of Alice and therefore is not entitled to the entire corpus of the trust estate to be distributed. Deane and Helen, however, as the heirs at law of testator, are each entitled to one half.

■ Finally, First National Bank of Kansas City as Executor of the Estate of Mason L. Dean, Deceased, and the bank and Heddens, as cotrustees of a trust created by Mason L. Dean, have raised the question whether they are entitled to an allowance of attorneys' fees for their efforts in effecting a proper construction of the will. Their point is not resisted by any party on this appeal. On the authority of Bernheimer v. First Nat. Bank of Kansas City, 359 Mo. 1119, 225 S.W.2d 745, O'Reilly v. Jackson, Mo.Sup., 269 S.W.2d 631, Trautz v. Lemp, 334 Mo. 1085, 72 S.W.2d 104, and City of St. Louis v. McAllister, 302 Mo. 152, 257 S.W. 425, we are of the opinion that these applicants, in these capacities, are entitled to a reasonable allowance of attorneys' fees, and that the court erred in overruling their application therefor.

The judgment of September 24, 1964 on the merits of the claims of Deane Green Anderson, Helen Dean Sullivan and the bank as executor and the bank and Heddens as cotrustees, is affirmed. The order of the same date overruling the application for attorneys' fees is reversed. The cause is remanded for a hearing on the application for attorneys' fees, and for any further exercise of the court's continuing jurisdiction reserved by the provisions of paragraphs 8 and 9 of the judgment. Costs of this appeal are adjudged against plaintiff as trustee, to be paid from the principal of the trust estate. O'Reilly v. Jackson, supra, 269 S.W.2d, l.c. 639.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HYDE, P. J., and HOLMAN and HENLEY, JJ., concur.

DONNELLY, J., not participating because not a member of the Court when the cause was submitted.