Cheryl Jean EASTER, Plaintiff–
Respondent,

v.

Margaret OCHS, Personal Represen-
tative of Estate of Alan Ochs, et
al., Defendants–Appellants.

No. 74619.

Supreme Court of Missouri,
En Banc.

Sept. 22, 1992.

Rehearing Denied Oct. 27, 1992.

Albert C. Lowes, David J. Roth II, Cape Girardeau, for defendants-appellants.

Dale E. Gerecke, Craig M. Billmeyer, Cape Girardeau, for plaintiff-respondent.

BENTON, Judge.

Cheryl Jean Easter sued to quiet title to four Missouri farms that she and her brother, Alan Ochs, claimed. When

Alan later died, his heirs—the Ochs family—became the defendants. The circuit court granted summary judgment for Cheryl on stipulated facts. Because a state statute is alleged to violate the equal protection and full-faith-and-credit clauses of the United States Constitution, this Court has exclusive appellate jurisdiction. Mo. Const., Art. V, § 3. The decision of the circuit court is affirmed.

On June 28, 1937, Adolph Ochs made a last will, which included:

> 7th. I devise to my son, Erwin Ochs, of Colorado, ... [the] "Mary Knox Farm" in fee; and I also devise to said Erwin Ochs for and during his natural life with remainder to his bodily heirs ... the "Floyd Knox Farm"; and I further devise to him the remainder after my wife's life estate in the Christian Ochs farm ... to him and his bodily heirs.
>
> ....
>
> 9th. The 125 acres in said Bois Brule Bottom ... I devise as follows: ... the remaining one-third to my son, Erwin Ochs, and the heirs of his body.
>
> 10th. I bequeath ... all the rest and residue of my property ... in equal parts to my wife and my said children, my wife taking a child's part therein.

Adolph died on July 4, 1937. His spouse, Rosetta, died intestate on January 10, 1943. Adolph and Rosetta had three children— Erwin, Esther, and Oneida. All parties agree that Esther Weinrich and the heirs of Oneida Bergman have filed quitclaim deeds surrendering their interests in the four farms being contested, and are not necessary parties.

Erwin and his spouse, Stella, had no natural children; they did adopt Cheryl and Alan on January 15, 1947, in Colorado. Erwin's will left all his property to Stella. After Erwin's death in 1976, Stella conveyed to Cheryl, by quitclaim deed, the Christian Ochs farm. Stella died on January 15, 1986. Her will devised all her real estate—including her claim to the remaining three farms—to Cheryl, and expressly disinherited Alan.

Two questions determine who owns these farms. First, what did Adolph intend by the language of his will? Second, to the extent that *§ 14079 RSMo 1929* illuminates Adolph's intent, is the United States or Missouri Constitutions violated?

**I.**

▮ The question who owns the farms is primarily a question of testator's intent in his will. Faced with a similar case, this Court held "... *it is* not a question of the right of an adopted child to inherit, but *simply a question of the testator's intention with respect to those who are to share in the estate.*" *First National Bank of Kansas City v. Sullivan*, 394 S.W.2d 273, 281 (Mo.1965), citing *Commerce Trust Company v. Weed*, 318 S.W.2d 289, 298 (Mo.1958) (ellipsis and emphasis in *Sullivan*). For this purpose, Missouri assumes that testators know and understand the meaning and effect of the terms used in their wills as defined under Missouri law. *Zombro v. Moffett*, 329 Mo. 137, 44 S.W.2d 149, 152 (1931); *see also Shaw v. Wertz*, 369 S.W.2d 215, 217 (Mo. 1963).

The question remains: should the meaning of the terms in the will be determined at the time the will is executed, or at the time its terms take effect? Two apparently conflicting cases address the issue.

The first, *Weed*, looks to the law at the time the provisions of the will take effect: "the testator intended that the trust assets were to vest in and be divided among those persons who were his lineal descendants on the termination date and that the qualifications of those who were to make up that class were to be judged according to their situation on that date." 318 S.W.2d at 298.

▮ The second, *Sullivan*, looks to the law at the time the will is executed. 394 S.W.2d at 280–81. *Sullivan* restates the traditional rule in Missouri—the meaning of terms in a will are determined by the law at the time that the will is made. *Id.* at 281. *Sullivan* distinguishes *Weed*, as have subsequent decisions. *Id.* at 281 & n. 5; *Papin v. Papin*, 445 S.W.2d 350, 353 (Mo.1969). *Weed* is limited to the principle that a Missouri testator can expressly tie a

will to the law other than that existing at the date of execution.

In 1937—at the time of Adolph's will—the law of the testator's domicile (Missouri) governed the construction of the will. *Zombro*, 44 S.W.2d at 152. Missouri law in 1937 clearly defined the terms of Adolph's will.

■ First, Adolph devised one farm—the Mary Knox farm—to Erwin in fee simple. Adolph devised the remainder in another farm—the Floyd Knox Farm—to Erwin's bodily heirs. Adolph devised the other two farms—the Christian Ochs farm and the Bois Brule Bottom—to Erwin using the language of fee tails—respectively, "to him and his bodily heirs" and to "Erwin Ochs and the heirs of his body." Missouri abolished fee tails long before 1937. A devise using the language of fee tails creates: 1) a life estate in the named devisee; 2) a remainder in the heirs of the body of the named devisee; and 3) a reversion to the devisor. *§ 3108 RSMo 1929* (currently codified at *§ 442.470 RSMo 1986*); *Davidson v. Davidson*, 350 Mo. 639, 167 S.W.2d 641 (1943); William F. Fratcher, *Trusts and Succession in Missouri—1957*, 23 Mo. L.Rev. 467, 469–70 (1958).

Second, the phrase "heirs of the body" specifically excluded adopted children under *§ 14079 RSMo 1929* (repealed 2 Laws of Mo.1947, at 213, 217).[1] *See also* Willard L. Eckhardt, *Work of Missouri Supreme Court for 1953—Property*, 19 Mo.L.Rev. 335, 337 (1954). Other phrases—such as "issue"—specifically included adopted children. *Kindred v. Anderson*, 357 Mo. 564, 209 S.W.2d 912 (1948) (citing pre–1937 cases).

■ Based on Missouri law, Adolph is presumed to have known that using the phrase "heirs of the body" excludes any adopted children from taking the remainder. By the plain language of his will, Adolph excluded Cheryl and Alan from taking a remainder. Thus, there were no heirs of the body; the remainder fails; and the

three "fee-tailed" farms pass as reversions, through the residuary clause of Adolph's will.

## II.

■ Second, does the use of *§ 14079* to illuminate Adolph's intent violate the United States or Missouri Constitutions? The Ochs family attacks *§ 14079* in two ways, both of which are legally irrelevant.

First, the Ochs family claims a violation of the full faith and credit clause. U.S. Const. Art. IV, § 1. This claim takes two main variations: 1) the full-faith-and-credit clause limits this Court to defining adoptee's rights (and the Missouri phrase "heirs of the body") solely for Missouri adoptions, while Colorado law controls adoptee's rights for a Colorado adoption; and 2) if *§ 14079* is not limited to Missouri adoptions but also controls Colorado adoptions, it violates the full faith and credit clause.

The first variation clearly contradicts Missouri law. Missouri presumes a testator knows and uses the law of his domicile and that the will was drafted with that law in mind. *Zombro*, 44 S.W.2d at 152. Otherwise, some adoptees would inherit under a will, while others would not, depending on the state of adoption, causing constant, unpredictable change in Missouri wills and land titles.

The only role of *§ 14079* in this case is to explain what Adolph meant by "heirs of the body." This statute does not establish the rights of Alan. Those rights are established by Adolph's will. The statute merely provides the meaning of the phrase "heirs of the body" when no further definition is provided by the testator. Adolph clearly used language that excluded adopted children, but the statute did not compel him to use this language.

Full-faith-and-credit principles and issues of comity require no more than that Missouri recognize Alan and Cheryl as "adopted children." Missouri is not, however, required to treat them any differently than any two children adopted in Missouri.

---

1. "[N]either said adopted child nor said parents by adoption shall be capable of inheriting from or taking through each other property expressly limited to heirs of the body of such child or parent by adoption." *§ 14079 RSMo 1929*.

Missouri recognizes the status of their Colorado adoption. That status does not affect the incidents of adoption provided by Missouri law. Nor does it alter construction of a will.

The second variation was decided against the Ochs family (before the will was even written). *Hood v. McGehee*, 237 U.S. 611, 35 S.Ct. 718, 59 L.Ed. 1144 (1915). The United States Supreme Court has not addressed this issue since *Hood*, nor has it given any indication that *Hood* is no longer valid. Therefore, this Court is compelled to deny this claim.

▮ Second, the Ochs family alleges a violation of both the state and federal equal protection and due process clauses. U.S. Const. amend. XIV, § 1; Mo. Const. Art. I, §§ 2, 10. Adolph's use of *§ 14079* is not state action. Adolph is clearly a private actor. *See Edmonson v. Leesville Concrete Co.*, — U.S. —, —, 111 S.Ct. 2077, 2083, 114 L.Ed.2d 660 (1991); *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). Likewise, state action is required to implicate the state equal protection and due process clauses. *First National Bank of Kansas City v. Danforth*, 523 S.W.2d 808 (Mo.), *cert. denied, sub nom. Sutt v. First National Bank of Kansas City*, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975), and *sub nom. Lakeside Hospital Ass'n v. First National Bank of Kansas City*, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975).

As these constitutional provisions do not restrict the acts of this testator, he was free to devise his property as he wished. The will clearly indicates his intent to exclude Cheryl and Alan from taking the three "fee-tailed" farms under the remainder provisions.

### III.

As a result of Adolph's will, Erwin had a fee simple in the Mary Knox farm, a life estate in the other three farms, and a reversion interest in those same three farms. At Erwin's death, the remainder failed because he had no bodily heirs. By Erwin's will, the fee simple and the three rever-sions passed to Stella; the three "fee-tailed" farms passed in fee simple to Stella, the holder of the reversion interests. Stella gave one farm to Cheryl, and later devised the remaining three to Cheryl. Cheryl thus owns all four farms, to the exclusion of the Ochs family.

The judgment below is affirmed.

All concur.