Pierre L. PAPIN, Jr., Gerard Allen Papin and Nicholas B. Papin, Respondents,

v.

Allen Cottrell Ashley PAPIN, Grace Ashley Papin, Gus Cottrell Ashley, Laura Ashley, Grace Ashley Papin, Executrix of the Estate of Harry Edward Papin, Jr., Deceased, St. Louis Union Trust Company, Trustee under Indenture of Trust Executed by Harry E. Papin, Sr., under Date of March 31, 1930, and St. Louis Union Trust Company, Trustee under Indenture of Trust Executed by Harry E. Papin, Sr., under Date of March 24, 1941, Appellants, except Union Trust Company.

No. 54325.

Supreme Court of Missouri, Division No. 2.

Sept. 8, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 13, 1969.

Isaac C. Orr, Laura Andreas, St. Louis, for respondents. Orr, Pflager & Andreas, of counsel.

Orville Richardson, St. Louis, for appellants.

BARRETT, Commissioner.

This essentially is a suit to construe two trust instruments executed by Harry E. Papin, Sr., one an insurance trust executed in 1930 and the other a "living trust" of securities executed in 1941. The trusts have terminated and construction is required to determine whether one of the appellants, Allen Ashley Papin, is entitled to one-half of the residuary sum, in excess of $315,000.00, now ready for distribution. Initially the suit was in three counts, the third count attacking the adoption of the appellant Allen Cottrell Ashley Papin, and for that reason Allen's natural parents, Gus and Laura Ashley, were made parties to the suit. The trial court found against the respondent plaintiffs on Count III, they did not file a motion for new trial, they did not appeal and they have not briefed or argued any matter in connection with that count and it is therefore unnecessary to again refer to that count or to any circumstance concerned with it. Thus the appeal is concerned only with Counts I and II and the construction of the two trust instruments. And in that connection the essence of the appeal is whether the appellant, Allen Ashley Papin, adopted in 1964 by Harry E. Papin, Jr., and his wife Grace, is entitled to share in the final distribution of the trust estate.

And the essence of the cause is made to appear in this threefold background: first, the identity and relationship of the individuals, second, the circumstances in which the trust instruments were executed, and third, the precisely relevant terms or language of the trusts.

Harry Papin, Sr.'s first wife was Lint Niedringhaus. They had two sons, Harry E. Papin, Jr., born August 22, 1899 and Pierre whose birth date does not appear. Seven years after Lint's death Mr. Papin married Nan Woodward, who died in 1951. Nan and Mr. Papin had no children. Mr. Papin, Sr., died in 1943. Pierre married Lilly Allen in 1926 and they had three children, Pierre, Jr., born in 1927, Gerard, born in 1933 and Nicholas, born in 1935. Their father died on February 18, 1964 and his three sons, Pierre, Jr., Gerard and Nicholas are the plaintiff-respondents in this action. Harry E. Papin, Jr., married Grace Ashley on August 31, 1940. She was divorced from her first husband, Ashley, in 1924. Harry E. Papin, Jr., and Grace had no children and on June 18, 1964, they adopted the principal defendant, Allen Ashley, who was then twenty-two years old and in the army. Allen was the son of Gus, age 50, and Laura Mary Ashley, both of whom testified in this proceeding. Gus Ashley, according to the appellants, is a half-brother of Grace. In any event, Harry E. Papin, Jr., died on July 15, 1964, less than a month after the adoption of Allen. As stated, Nan, the wife of Harry E. Sr., died in 1951, his son Pierre died in February 1964, Harry, Jr., died in July 1964, thus these deaths have terminated all life estates, the trusts have come to an end and the estates are subject to final distribution. The plaintiffs have been paid one half the trust estates and the problem, dependent on the construction of the trust instruments, is whether they or Allen are entitled to the residuary balance.

The circumstances in which Harry E. Papin, Sr., executed the 1930 trust are meager, the appellant says that it is not known whether he had legal advice when it was written. However, the St. Louis Union Trust Company as cotrustee with Mr. Papin's wife Nan signed and executed the document by a vice-president and it was witnessed by an assistant secretary. Mr. Papin for more than thirty years was an insurance salesman. From these facts and from its form as well as its content, in-

cluding the technical terms and words of art, it is indeed a reasonable inference that the document was not drafted by Mr. Papin alone or by any layman but by some person skilled and experienced in the drafting of legal documents and by the same token by a person with considerable knowledge of the law of trusts. In addition, this trust was amended on March 17, 1932, April 15, 1938, April 7, 1941 and finally on September 6, 1941. The terms of the specific amendments are not involved here and are not too significant except in two respects; in the September 1941 amendment his sons Harry, Jr., and Pierre were made cotrustees upon the death or inability of Nan to act and in each instance of amendment he reaffirmed or acknowledged the execution of the principal instrument—in March 1932 the amendment concluded "I hereby ratify and confirm said Trust Indenture dated March 31st, 1930." Then too in 1933 an "estate planning officer" from 1929 to 1961 with St. Louis Union Trust Company introduced himself to Mr. Papin and thereafter advised and consulted with him concerning trusts and this relationship culminated in the 1941 living trust. This man was also one of the witnesses to Mr. Papin's will executed on March 24, 1941, the date on which the 1941 trust was also executed.

This trust officer, Mr. Storm, prepared a "memorandum for revocable living trust" for Mr. Papin dated October 29, 1935. He saw Mr. Papin for lunch and other engagements about once a month over the years finally selling him, in the language of appellant's counsel, on a living trust. In this connection Mr. Storm introduced Mr. Papin to a lawyer, Mr. Clarence T. Weindel, who drafted his will and the 1941 trust from information and the memorandum furnished by Storm. Mr. Storm furnished Mr. Weindel with a copy of Mr. Papin's 1932 will but he was not furnished a copy of the 1930 insurance trust and "did not know it was in existence." Mr. Weindel drafted the trust document and delivered it to a lawyer in the trust department of St. Louis Union Trust Company and, as indicated, it was thereafter executed.

Under the 1930 trust the income was to be paid to his wife Nan "during her lifetime" and at her death to continue for the benefit of his sons Pierce and Harry "or the survivor of them; the descendants of a deceased son to take the share of the deceased parent." In the third paragraph there was a provision for "any grandchild of the Grantor" who may become entitled to receive any portion of the trust, the last sentence of that paragraph providing: "On the death of any such grandchild during the trust for it, its share shall go to *its heirs at law by blood related to the grantor*." In the 1941 trust, as indicated, upon the death of Mr. Papin's wife, and she died in 1951, the income was to be paid to his sons Pierce and Harry E., Jr. "during their respective lives." Upon the death of the sons the residue constituting the trust "of such deceased son shall be paid over and distributed to and invest in his descendants then living, per stirpes * * * or if no such descendant is then living the same shall go to the survivor of Grantor's said sons, or to his descendants then living." In its findings of fact and conclusions of law the trial court quoted these and other provisions of the trust instruments, found that there were no provisions for the benefit of Mr. Papin's daughters-in-law and that no power of appointment was conferred upon either son. The court then sought the grantor's intent by construing the language of both trusts— "on the death of any such grandchild * * its share shall go to its heirs at law by blood related to the grantor" and "descendants"— and found that Mr. Papin intended to exclude any person, here the appellant Allen Ashley Papin, adopted by a son. It was the court's view that the grantor's trusts were for the benefit of and included only "descendants in the blood line."

The trial court found the facts and issues essentially as they have been set forth here and on the basis, largely, of First National Bank v. Sullivan, Mo., 394 S.W.2d 273,

found that Harry E. Papin, Sr.'s intention when he executed the two trust instruments was demonstrated by his use of the words "heirs at law by blood related to the grantor" and "descendants" and meant that his estate should be distributed only to those related to him by blood and excluded an adopted person—here Allen Ashley Papin. In a four-point brief but with twenty elaborate subdivisions the appellants, particularly on behalf of Allen, have attacked or in some manner challenged virtually every sentence in the court's findings and conclusions in great detail buttressed by extended argument and citation of authority. It is for this reason that the background has been set forth in this opinion more elaborately than necessary. Every point and authority has been considered but it is not necessary to a disposition of this appeal to set them out, distinguish the numerous cases and demonstrate the validity or invalidity of every finding of fact and conclusion of law. The appellants have simplified appellate problems considerably by asserting, as do the respondents, that the Sullivan case "supports our position." In this connection it should be noted that with indefatigable zeal the appellants have made some distinction in virtually every Missouri case concerned with wills, trusts and adopted persons but it is not necessary to a disposition of the cause to note those cases and their applicability or inapplicability.

▬▬▬ At one point, "to read" the Sullivan case in construing the words "heirs" and "descendants" in their favor the appellants say that the controlling case is Commerce Trust Co. v. Weed, Mo., 318 S.W.2d 289. But the Sullivan case pointed out in its text as well as in footnotes that in the Weed case it was plainly testator's intention that the class of beneficiaries, including an adopted child, in the language of a footnote "were to be judged according to the laws in effect on the date of the termination of the trust," thereby on that latter date giving to an adopted child or grandchild the status of a natural born child.

Needless to say, Mr. Papin had no such obvious intention, on the contrary and determinative of the appellant's cause is the controlling principle and "the general rule that whether an adopted child is embraced within the meaning of a described class of beneficiaries in a will is governed *by the law in force at the time the will or other instrument was executed*." First National Bank of K. C. v. Sullivan, 394 S.W.2d 1. c. 281; Ratermann v. Ratermann, Mo., 405 S.W.2d 891. And so the court in the Sullivan case ruled, 394 S.W.2d 1. c. 281, "that testator used the terms 'heirs of the body' and 'heirs at law' in Article IX and elsewhere in the will according to the meaning and effect the law attached to them at the time he used them, and that he wanted them so interpreted at the time these classes were to be ascertained and determined." Speaking of the adoption law in force when the instrument was executed the court said, "We presume that he used the limited wording 'heirs of the body of my said daughter' with this statute in mind, knowing that the term 'heirs of the body' was much more limited in scope than 'heirs at law' and under then-existing law was limited to blood relationship." In the Sullivan case, the will was dated 1923, in it the testator created a trust for the benefit of his daughter Alice (not survived by a natural son) for her life and upon her death (October 29, 1963) "to the heirs of the body of my said daughter, per stirpes and not per capita, their heirs and assigns forever, or if my said daughter have no heirs of her body at her death, then to my heirs at law." Alice was survived by Deane Green Anderson whom she adopted at age 43 on July 10, 1953 and the court concluded, "Deane is not an heir of the body of Alice and therefore is not entitled to the entire corpus of the trust estate to be distributed" even though she was entitled to a one-half interest as an heir at law. Other cases supporting the ultimate ruling in the Sullivan case as well as this cause are Melek v. Curators of Univ. of Mo., 213 Mo.App. 572, 250 S.W. 614; Wyeth v. Merchant, D.C., 34 F.Supp. 785; Ratermann v. Rater-

mann, supra; First National Bank of K. C. v. Waldron, Mo., 406 S.W.2d 56, and Knox College v. Jones Store Co., Mo., 406 S.W. 2d 675, and the annotations 96 A.L.R.2d 639; 86 A.L.R.2d 12; 86 A.L.R.2d 115; 43 A.L.R.2d 1183.

This alone is probably sufficient to dispose of this appeal but there are other significant factors supporting the court's interpretation and finding of the trustor's intention. In Mr. Papin's trust instruments the references are to *"heirs at law by blood related to the grantor,"* not to his sons and "their heirs at law" as in St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S.W.2d 685, or "among my surviving children and *the descendants of any deceased child or children of mine"* as in Hayes v. St. Louis Union Trust Co., Mo., 280 S.W.2d 649. "If the testator had provided that, upon the death of the life tenant, the remainder should go to his own heirs, then it might be possible to sustain defendants' contention (his property to go to descendants of his own blood, not to adopted children). But that was not what he said. He provided that it should go to the life tenant's heirs." Brock v. Dorman, 339 Mo. 611, 614, 98 S.W.2d 672, 674. As indicated, and they were considered in the Sullivan case, the adoption statutes (RSMo 1959, §§ 453.090, 453.150, V.A.M.S.) their force and effect indicating the recently changed liberal policy toward adopted persons are of course factors "but are considered merely as aids in their construction" (2 Am.Jur. (Adoption) § 92, pp. 933–934) and in arriving at the trustor's intention. Knox College v. Jones Store Co., Mo., 406 S.W.2d 675, 690; First Nat. Bank of K. C. v. Waldron, 406 S.W.2d 56; Leeper v. Leeper, 347 Mo. 442, 147 S.W.2d 660; Annotation 43 A.L.R.2d 1183 "Right of adopted child to inherit from kindred of adoptive parent." And see the two annotations 86 A.L.R.2d 12 "Adopted child as within class in testamentary gift" and 86 A.L.R.2d 115 "Adopted child as within class named in deed or inter vivos trust instrument."

The court retained jurisdiction to determine all issues relating to attorneys' fees to "attorneys for plaintiffs," there has been no adjudication of this question and there is no reviewable issue on this subject in this court. Jesser v. Mayfair Hotel, Inc., Mo., 360 S.W.2d 652, 656.

For the reasons indicated, the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

DONNELLY, P. J., MORGAN, J., and RUDDY, Special Judge, concur.

FINCH, J., not sitting.