Carl G. STIFEL et al., Plaintiffs-Respondents,

v.

Thomas P. BUTCHER et al., Defendants,

Donald Gunn, Jr., Guardian Ad Litem for Karen Louise Murphy, et al., Appellants.

No. 55787.

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1972.

As Modified on Denial of Rehearing Nov. 13, 1972.

for all unknown or unborn persons claiming any right, title or interest by or through the will of Charles H. Peck or who derive or claim to derive their respective right, title, claim or interest as heirs, devisees, grantees, assignees, successors or descendants of Charles H. Peck, deceased, or any of his descendants or any of the above named defendants-respondents.

Peper, Martin, Jensen, Maichel and Hetlage, Warren R. Maichel, St. Louis, for defendants-appellants, realigned-respondents, Nancy Sue Butcher Thompson, Mary Elizabeth Butcher and John Keimig Butcher, a minor.

C. Perry Bascom, Bryan, Cave, McPheeters & McRoberts, St. Louis, guardian ad litem and counsel for defendant-appellant, realigned-respondent Danika Marie Butcher, a minor.

Donald Gunn, Jr., St. Louis, guardian ad litem for Karen Louise Murphy, a minor, Barbara Lynne Murphy, Deborah Lee Murphy, Robby Vaughn Johnston, Roberta Ann Johnson, Roger Drew Lenthe, Susan Dillaine Lenthe, Stephen Dirk Lenthe, Gene Anne Lenthe, Nan Travis Scogin, Jan Roland Scogin, Robert Cruse Scogin, Jeffrey Robert Peck, Karen Louise Dworsack, Fannie Lee Peck, Barbara Ann Peck, Warren Allen Peck, Constance Jean Peck and Carol Peck, Gunn & Gunn, St. Louis, of counsel.

Samuel C. Ebling, St. Louis, for plaintiffs-respondents.

Forrest M. Hemker, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, for Thomas P. Butcher, Walter Whitmore Butcher and Mary Louise Butcher Boertman, defendants-respondents.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Benjamin Uchitelle, Francis M. Oates, St. Louis, for defendants-appellants, realigned-respondents, Steven Whitmore Butcher and Jeffrey Ross Butcher.

Frank P. Motherway, St. Louis, for above named defendants-respondents and

WELBORN, Commissioner.

Action to construe testamentary trust.

Charles H. Peck, a resident of St. Louis, executed his will, drawn by him, July 15, 1897. Peck died July 3, 1899, and his will was probated. The will created a trust, and this action is concerned, primarily, with the distribution of the trust income under Clause Sixteenth of his will, reading as follows:

"Sixteenth: For and during the life of the last surviving one of my descendants that may be living at the time of my death, and for and during fifteen years next after

the death of said survivor the said trustees shall pay all the remaining net income of the trust estate not hereinbefore disposed of (or that may be by Codicil to this Will hereafter disposed of) in equal annual quarterly payments, on the fifteenth day of January, April, July and October of each year as follows, to-wit:

"To my son Charles H. Peck Jr. during his life three eighteenth share of said income.

"To my son Stephen Peck during his life three eighteenth share of said income.

"To my son John A. Peck during his life three eighteenth share of said income.

"To my daughter, Rebecca, wife of J. W. Dusenbery Jr., during her life three eighteenth share of said income.

"To my daughter Belle Peck during her life three and one half shares of said income.

"To Lidda, and Mamie Peck, daughters of my deceased son Rudolph Peck, to each, during their lives one and one half thirty-sixth share of said income.

"To Mabel, and Marion Peck, daughters of my deceased son Roderick A. Peck, to each, during their lives one and one half thirty-sixth share of said income.

"To William J. Peck, son of my deceased son, William W. Peck during his life one and one half eighteenth share of said income, said share to be paid to Stephen Peck, in trust, and, by him paid from time to time as he may think proper to said Wm. J. Peck until he arrives at the age of twenty-five years, and thereafter said share to be paid directly to said Willie J. Peck.

"If the above named my descendants should die prior to my death, leaving descendants living at the time *at the time* of my death, such last mentioned descendants shall receive per stirpes and in equal parts, the share their deceased parent would have taken if then living, and said trustees shall pay such share accordingly.

"Whenever after my death and prior to the expiration of said fifteen years next after the death of the last surviving one of my descendants living at the time of my death, any one of my descendants shall die leaving descendants living such last mentioned descendants shall receive per stirpes and in equal parts the share their deceased parent would have received if then living and said trustees shall pay such share accordingly.

"The word 'descendants,' wherever used in this Will, means lawful descendants, and means descendant where there is but one.

"The payment of income to be made under this sixteenth clause of my will to my descendants, and under any will of any of my descendants having the power of appointment as hereinafter authorized, are in each individual case to be made only during the life of such descendant who may die prior to the expiration of said fifteen years, and in the case of my descendants who may [be] living at the expiration of said fifteen years, the payments to be made to them in each individual case until the expiration of said fifteen years and then cease.

"The share that my descendants would *would* receive under this sixteenth clause is subject to be diminished by the provisions of 15 clause and to [be] increased or diminished by the following provisions.

"I hereby authorize and empower any of my descendants to whom the right has accrued under any provision (this included) in this 16th clause of my *my* will, any share of said income to designate and appoint, by his or her duly executed will, the person or persons, among my descendants, only and whether or not their parent descended from me, be living to take and receive such share of said income after the death of said descendant—theretofore receiving such share making said appointment by will, such designation and appointment by such will may be of, and to one or more of my descendants, and for not exceeding the *perod* above limited, and if to

more than one descendant, then of what part of said share each is to receive, and the said trustees under my will shall pay said shares in the parts, and to the person or persons among my descendants designated and appointed as aforesaid by the will of the deceased descendant to to whom it was formerly paid.

"Should any of my descendants die before or after my death leaving no descendants, or Brother or Sister descended from me, and having made no appointment by will as above provided, of the person to whom to his or her share should after his or her death be paid, then such share of income under this sixteenth clause of my will shall be be paid to the other of my descendants then living and entitled to receive shares of income under this sixteenth clause of my will and in the same proportion in which they are receiving shares of income.

"In every case of any payment of income to be made under this sixteenth clause of my will to any female, such payment shall be to her for her sole and separate use, and free from the control and debts of her husband, if any she have."

The direction to pay Belle Peck "three and one half shares" of the income created an immediate problem in view of the eighteenth and thirty-sixth fractional shares given the other beneficiaries. If Belle's share was a 3.5⁄18ths, the total shares specified by the will would have amounted to 40⁄36ths. This ambiguity brought about a suit by the trustees in the St. Louis Circuit Court in which all of the living descendants of the testator and their spouses were defendants. Based upon an agreement of the beneficiaries, a decree was entered on January 30, 1902, by which the shares of the income beneficiaries were determined in twentieths and fortieths fractions.

Charles Peck, Jr., a son of the testator, who died after the execution of the will and before the testator, was survived by two children. One, Pearle Peck Desnoyers, had three minor children at the time of the 1902 decree, two of whom were alive at the testator's death and one who had been born afterwards. Those three children were parties to the 1902 action and represented by a guardian ad litem who advanced no claim on their behalf to share presently in the income as a descendant of the named income beneficiary. The decree divided the share of Charles Peck, Jr., equally between his two children. The effect of this decree was a per stirpes construction of the provision of Clause Sixteenth insofar as it directed the distribution of the income share of a first taker who did not survive the testator. The language of Clause Sixteenth was identical in the gift to descendants "per stirpes and in equal parts" in the case of descendants predeceasing the testator and those who died subsequently.

John A. Peck, a son of the testator and one of the named income beneficiaries, died in 1926. By his will he attempted to exercise the power of appointment granted him by his father in Clause Sixteenth in favor of two of his sisters, but on the condition that they pay an amount equal to one third of the income to John Peck's widow. In 1938 a suit was filed in the St. Louis Circuit Court by Austin Peck II, a grandson of Charles Peck. The petition alleged that the attempted conditional exercise of the power of appointment by the will of John A. Peck was invalid because it had the effect of naming a person not a descendant of Charles H. Peck as the taker of the income rights of John A. Peck, "and this John A. Peck was forbidden to do by the will of Charles H. Peck." The prayer was for a decree that the income to which John A. Peck was entitled under the will of Charles H. Peck be distributed in equal shares to the descendants of Charles H. Peck living at the time of the death of John A. Peck, in accordance with the conditional exercise of the power of appointment by John A. Peck in favor of all of the descendants of Charles on the failure of the first conditional exercise of the power.

The defendant trustees and two daughters of Charles H. Peck, Belle and Rebecca, who were trustees, individually, filed an answer and cross-bill to plaintiffs' petition.

The cross-bill alleged that construction of the will of Charles H. Peck was required in numerous particulars, including the following:

"(a) Whether the testator Charles H. Peck, by that portion of the Sixteenth Clause of his said will, being the third paragraph on page ten (10) of the foregoing printed copy of said will, intended that in instances where a descendant enjoying income of said trust estate should die leaving descendants surviving him, that such deceased descendant should have no power of appointment by which he could deprive his surviving descendants of the share of the trust income which such deceased descendant would have enjoyed if living; and whether by the expression 'per stirpes and in equal parts' the testator Charles H. Peck intended that payments to the surviving descendants of such deceased descendant shall be made by the Trustees per stirpes or per capita."

The court entered its decree on August 14, 1940. By its decree the court, among other matters, decreed:

" * * * and that the testator, by the aforesaid provision 'per stirpes and in equal parts,' intended that the said share of the trust income should thenceforth be distributed per capita among all such lineal descendants living at the time of the death of such deceased income beneficiary."

"That it was the intention of the Testator, Charles H. Peck, as expressed in the Sixteenth Clause of his said will, that a descendant of Charles H. Peck who is enjoying a share of the income from the trust estate under the will of said Charles H. Peck can not lawfully exercise said power of appointment so as to deprive his or her surviving lineal descendants of such income beneficiary of

the share of the trust income theretofore enjoyed by such deceased income beneficiary prior to death, but that said share of said trust income is required to be distributed to all of such lineal descents per capita."

Notice of appeal to this court was filed, but while the appeal was pending an "Agreement of Compromise" was worked out among the parties. Pursuant to the agreement, the decree of the circuit court was affirmed by this court.

Pearle Peck Desnoyers, a granddaughter of Charles H. Peck and daughter of named income beneficiary Charles H. Peck, Jr., died in 1954. She was survived by four children and five grandchildren. At her death, Pearle was receiving 22.9052% of the trust income, which under the per stirpes construction given the trust in the 1902 decree would have been distributable to her four children equally, but under the 1940 decree would have been distributable to the nine descendants, per capita. All nine were adults and an agreement was reached by which the share of Pearle was distributed to the nine descendants. The recipients indemnified the trustees respecting the distributions to them. Subsequent changes in the rights of persons in the Desnoyers line were worked out by agreement among the affected parties, with indemnity agreements for the trustees.

On September 13, 1960, Mary P. Butcher (named in the will as Mamie Peck and sometimes referred to as Mayme Peck), a granddaughter of the testator, died. At her death, she was receiving 43.26089% of the trust income. She was survived by three children, three natural grandchildren and two adopted grandchildren. A child was born to one of the adopted grandchildren after the death of Mary Peck Butcher.

Because of the minority of some of the descendants of Mary and the involvement of adopted children, the trustees in 1967 brought the action presently under review.

They sought a determination as to the persons who are the descendants of Charles H. Peck and particularly the persons entitled to the share of the income formerly payable to Mary Peck Butcher, including whether adopted children are descendants of the testator. The action also sought directions for distribution of the corpus upon termination of the trust and approval of the trustees' accounts. All known descendants of Charles H. Peck, natural and adopted, were named defendants, as were unborn and unknown persons who might claim an interest in the trust. A guardian ad litem was appointed to represent all minors involved and an attorney was appointed to represent all of the unknown and unborn persons who might be affected.

The answer filed on behalf of the minor children asserted that the 1940 decree determined that income should be distributed per capita, not per stirpes, and asserted a present right to income on the part of some such minors by reason of such adjudication. The minors' answer denied the right of adopted children to share in either the income or principal of the trust.

The three natural grandchildren of Mary Peck Butcher filed answers, relying upon the 1940 decree, and denying that the adopted persons have any interest in either the income or corpus of the trust. The two adopted grandchildren by their answer asserted a claim to a share of the Mary Peck Butcher income as descendants of the testator and also to a share in the corpus upon termination of the trust as descendants of the testator. The separate answer of the daughter of the adopted grandchild sought a determination that she was entitled to a ⅑ share of the Mary Peck Butcher income from her birth in 1967 and also to share in the corpus as a descendant of the testator.

The descendants of Pearle Peck Desnoyers, by their answer, supported the 1940 decree and asserted a right to share in the income in the proportions they were then receiving.

Thomas P. Butcher, Walter Whitmore Butcher and Mary Louise Butcher Boertman, children of Mary Peck Butcher, answered jointly, asserting that the income share of their mother should be divided equally among them. They asserted that the purported construction in the 1940 decree of the term "per stirpes and in equal parts" as calling for a per capita distribution was beyond the jurisdiction of the court because the issue had not been tendered by the pleadings and furthermore had been decided by the 1902 decree. Their answer denied that there was any present necessity for determination of rights to income or principal upon future contingencies. They stated that four descendants of the testator living at his death survived and that the trust continued until 15 years after the death of the last of those four.

After a trial, the court entered a decree which may be summarized as follows:

1. The intention of the testator in Clause 16 of his will was that substituted income beneficiaries take per stirpes and not per capita; that the 1940 decree to the contrary is coram non judice and void; that the income previously distributed to Mary P. Butcher should be distributed in equal shares to her three surviving children; that from the date of the decree the Desnoyers share should be distributed per stirpes to the two daughters of Pearle P. Desnoyers.

2. The word "descendants" as used in Clause 16 includes adopted persons.

3. That upon termination of the trust, the corpus is to be distributed in equal shares per capita to the then living descendants of Charles H. Peck, natural and adopted.

4. That descendants taking the share per stirpes of a deceased income beneficiary are those descendants living on the date of death of the predecessor income beneficiary.

5. The accounts of the trustees were approved.

After motion for new trial had been overruled, separate notices of appeal were filed by the guardian ad litem for the defendant minors, the three natural grandchildren of Mary Peck Butcher, the two adopted grandchildren of Mary Peck Butcher, and the daughter of the adopted grandchild. Although the decree changed the distribution of the Desnoyers share, no appeal was filed on behalf of the persons who had previously shared in such income.

Briefs have been filed by the guardian ad litem for the minor children, asserting essentially that the trial court erred in admitting adopted children to share in the trust income and corpus, and asserting that by the doctrine of either res adjudicata or estoppel by verdict, the 1940 decree determined the per stirpes vs. per capita issue. Briefs on behalf of the other appellants support the latter contentions of the guardian ad litem-appellant. The natural grandchildren of Mary P. Butcher assert that inclusion of adopted children as "descendants" was error, but support the holding that the date as of which substitute income beneficiaries are determined is the date of death of the predecessor income beneficiary. The adopted grandchildren support their inclusion as "descendants" and the date of determination of identity of substitute income beneficiaries.

The trustees, as respondents, have filed a brief, requesting affirmance of the trial court's decree, insofar as it approved the accounts of the trustees for the period from January 1, 1952 to December 31, 1967, and insofar as it found that the trustees had faithfully performed their duties and have in their possession all property of the trust estate which the estate should properly have.

This equity case is for review de novo on appeal, but such review is limited by the issues properly briefed and argued in this court. No objection has been raised to the decree approving the trustees' accounts and finding that they had faithfully performed their duties and had possession of the trust property. That portion of the decree is affirmed.

Because of the reliance by appellants on the 1940 decree, that litigation is examined in detail. That litigation was precipitated by the death of John A. Peck in 1926. John was a son of Charles H. Peck and one of the income beneficiaries under the Clause Sixteenth of the Peck will. By his will John had attempted to exercise the power of appointment given income beneficiaries in Clause Sixteenth. He exercised the power in favor of his sisters, Rebecca P. Dusenbery and Belle P. Bryant, on the condition that they pay a sum equal to a portion of it to John's widow. A conditional gift to John's niece, Mayme (Mary) P. Butcher, in the event of his sisters' refusal to abide by the conditions of the gift to them was made, again on the condition that the niece pay a sum equal to a portion of the income to John's widow. In the event that she refused to abide by the condition, the will appointed John's share to all of the descendants of Charles living at John's death.

Austin P. Peck, a son of Charles H. Peck, had died before Charles. The will of Charles devised a farm to the widow and children of Austin Peck and also gave the widow and female children annuities from the trust estate and $500 to each of the sons. None of the children of Austin was named as a beneficiary in Clause 16.

The 1940 decree was entered in a suit brought by five children of Austin Peck, a grandson of Austin, and a minor great-granddaughter. The petition sought a declaration that the attempted exercise of the power of appointment by John Peck was void because it attempted to give a portion of John's share of the income to his widow who was not a descendant of Charles H. Peck and that under the latter's will, a power could be exercised only in favor of descendants of the testator. The petition alleged that the conditional exercise of the

power in favor of all of the descendants of Charles living at the time of his death was in accord with the will of Charles and controlled the disposition to be made of such income. The Third Amended Petition on which the cause was submitted named 32 persons or their representatives who were entitled to a $\frac{1}{32}$ share each. The respondents here, Thomas P. Butcher, Walter Whitmore Butcher and Mary Louise Butcher Boertman were among the 32 named and they were among the parties defendant in the cause.

The three Butcher children joined their mother, Mary Peck Butcher, four of the trustees under the will of Charles H. Peck, two children of Charles, five grandchildren and four great-grandchildren in a general denial as their answer to the plaintiffs' Third Amended Petition. The two children and six grandchildren, including Mary, were the persons receiving income under Clause 16 at John's death.

Later, four of the trustees, including Charles' daughters, Rebecca Peck (Dusenbery) and Belle Peck (Bryant), and Rebecca and Belle, individually, filed an amended answer and cross-bill which gave rise to the portion of the 1940 decree here involved. The answer of these defendants asserted that under the will of Charles, the power of appointment given an income beneficiary was required to be exercised in favor of either another named income beneficiary or his descendants, and that John's attempt to include all of the descendants was invalid and that John's share of the income should be distributed to his sisters, Belle and Rebecca, under that portion of the Sixteenth Clause of Charles's will providing for disposition of the share of an income beneficiary who left no descendants and made no appointment.

The answer also alleged that, under Charles's will, descendants of Austin Peck were excluded from sharing in the income of the trust under Clause 16, whether as appointees under a power of appointment or otherwise. It also alleged that two of Austin's descendants had filed suit to have the trust under Charles's will declared void and that they thereby forfeited any interest in the estate of Charles under the no-contest clause of his will.

By their cross-bill, the trustees stated that they were uncertain as to the meaning of Charles's will insofar as the rights of descendants of Austin to share in the income under Clause 16 were concerned and asked the court to declare whether or not descendants of Austin were excluded from the receipt of income under Clause 16, including by way of exercise of power of appointment.

The cross-bill further stated:

"These defendant Trustees further show to the Court that the said John A. Peck left no children surviving him, nor any descendants of any deceased children, but that the said John A. Peck was survived by two sisters, towit, the defendants Rebecca P. Dusenbery and Belle P. Bryant; that these defendant Trustees are in doubt as to the true intention and purpose of the testator Charles H. Peck as expressed in the Sixteenth Clause of his said will in the following particular, towit:

"(a) Whether the testator Charles H. Peck, by that portion of the Sixteenth Clause of his said will, being the third paragraph on page ten (10) of the foregoing printed copy of said will, intended that in instances where a descendant enjoying income of said trust estate should die leaving descendants surviving him, that such deceased descendant should have no power of appointment by which he could deprive his surviving descendants of the share of the trust income which such deceased descendant would have enjoyed if living; and whether by the expression 'per stirpes and in equal parts' the testator Charles H. Peck intended that payments to the surviving descendants of such deceased descendant shall be made by the Trustees per stirpes or per capita."

It prayed for a decree of the court resolving these questions.

A reply to the answer and cross-bill was filed by the plaintiffs. Elizabeth P. Peck, widow of John A. Peck and a trustee of the Charles H. Peck trust, also replied to the cross-bill and answer. Both replies were general denials.

After some defendants who claimed as descendants of Austin were realigned as parties plaintiff, the cause was submitted. On August 14, 1940, the court entered its decree by which it found against the plaintiffs and in favor of the defendants on plaintiffs' petition and in favor of the cross-billants and against the plaintiffs on all issues presented by the cross-bill. The decree contained the following language:

" * * * and that the testator, by the aforesaid provision 'per stirpes and in equal parts,' intended that the said share of the trust income should thenceforth be distributed per capita among all such lineal descendants living at the time of the death of such deceased income beneficiary."

"That it was the intention of the Testator, Charles H. Peck, as expressed in the Sixteenth Clause of his said will, that a descendant of Charles H. Peck who is enjoying a share of the income from the trust estate under the will of said Charles H. Peck can not lawfully exercise said power of appointment so as to deprive his or her surviving lineal descendants of such income beneficiary of the share of the trust income theretofore enjoyed by such deceased income beneficiary prior to death, but that said share of said trust income is required to be distributed to all of such lineal descents per capita."

A motion for new trial was filed by plaintiffs. Paragraph 9 of the motion stated:

"9. The Court erred in ruling that the right, conferred upon those receiving income under the trust, to dispose of such right by a Will, does not include the right so to dispose of such income right when the person attempting to dispose by Will of such right has children or descendants. The right by power of appointment to dispose by Will of such income is as broad as the right to dispose of property by Will, under the provision creating such right in the Will of Charles H. Peck, and while that is not an issue in this case, it was error for the Court to rule that such right or power to dispose of such income by Will is so limited, and it is contrary and repugnant to the language of the Will of Charles H. Peck so to rule."

The motion for new trial was overruled and plaintiffs filed a notice of appeal. While the appeal was pending, a compromise was agreed to under which the sisters who prevailed in the circuit court paid various sums to the plaintiffs and paid plaintiffs' attorneys' fees. Pursuant to the compromise agreement, this court affirmed the trial court's decree.

Insofar as that portion of the decree here relied upon as determinative of the issue presented in this case is concerned, the issue involved arose from the cross-bill of the trustees. As plaintiffs' motion for new trial pointed out, the right of an income beneficiary leaving descendants to appoint was in no manner in issue. The litigation involved an attempted exercise of the power of appointment by John A. Peck who left no descendants. None of the parties to the litigation who were receiving income and who had children asserted in the litigation any right to exercise the power of appointment should they have descendants.

Likewise, there was no issue in the case as to who was entitled to share in the income in the event of the death of an income beneficiary survived by descendants. None of the parties plaintiff was asserting any right based upon the rights of descendants under Clause 16 of Charles's will. Their claim was based upon John's exercise of his right to appoint to include them. John having left no descendants, there was no one to contest the distribution of his share of the income had it gone to his descendants.

The adversary parties to the cross-bill, the plaintiffs and John's widow and the personal representatives of his estate, on one side, and the trustees and two individual beneficiaries, on the other, had no concern with these issues attempted to be raised by the cross-bill. The cross-bill was not directed at the other parties defendant. The trial court's decree on the cross-bill was against the plaintiffs only, not against the plaintiffs and all other defendants. None of the other defendants responded to the cross-bill and no issue was made by the pleadings between them and the cross-billants on the issues attempted to be raised by the cross-bill. Insofar as the Butchers were concerned, they had no present interest in the issue of per capita or per stirpes distribution. At the time of the litigation, none had children and in such circumstances they would receive the same share under either method of distribution.

There is no doubt that the trustees requested the construction of the Peck will on the question here presented for determination and that the circuit court in its 1940 decree passed upon the question. Furthermore, the persons now attacking the 1940 decree were parties to the litigation which produced the decree. The trial court found that "the portion of the 1940 decree purporting to adjudicate and determine that income under such circumstances would be distributable to a decedent income beneficiary's descendants per capita is coram non judice and void."

The aspect of coram non judice relied upon by the trial court and here asserted by the Butchers is that which renders void that portion of a judgment which purports to adjudicate issues not presented in the pleadings or litigated between the parties. 49 C.J.S. Judgments § 50. The trial court's jurisdiction of the subject matter of the 1940 litigation and of the parties is not disputed.

The trustees' cross-bill which produced the 1940 decree did raise the issue as to the distribution of the share of an income beneficiary who leaves descendants and did raise the question of whether the distribution to such descendants should be per capita or per stirpes.

In Charles v. White, 214 Mo. 187, 112 S.W. 545, here relied upon by the respondents Butchers, there had been a prior adjudication in an action by a creditor against a grantor and the grantees that as to the creditor the conveyance was fraudulent and void. The creditor, however, took no action to enforce the judgment and obtained satisfaction of his debt otherwise. Subsequently, the grantor purported again to convey the land and the effect of such conveyance became the issue in a quiet title action between persons claiming under the grantees in the conveyance which was the subject of the prior action and those claiming under the grantor. The court held that the prior adjudication was not res judicata. The substance of the court's reasoning as applicable here is found in the following excerpt from the opinion (112 S.W. 550):

"3. In amplification of the first point in this opinion, it may be said that, unless the defendants contest an issue with each other either upon the pleadings between themselves and the plaintiffs, or upon cross-pleadings between themselves, the judgment or decree will not be res judicata in subsequent litigation between them. There can be no doubt that, upon proper pleadings, a judgment may determine the rights of the defendants even between themselves, and our Code provides for such a proceeding, but a judgment against defendants, if there are no issues between them, do not bind them as against each other. State Bank v. Bartle, 114 Mo. 276, 21 S.W. 816; Boogher v. Frazier, 99 Mo. 325, 12 S.W. 885; 1 Van Fleet's Former Adjudication, § 256; McMahan v. Geiger, 73 Mo. 145, 39 Am.Rep. 489; O'Rourke v. Lindell Ry. Co., 142 Mo. 342, 44 S.W. 254."

In the present case, the trustees' cross-bill does not name the parties against whom relief is sought by way of the

cross-bill. Under the rules of pleading in effect at the time the cross-bill was filed, a defendant could obtain relief against codefendants by way of a cross-bill "only when it is also against the plaintiff and in aid of the cross-pleader's defense to the original action." Campbell v. Spotts, 331 Mo. 974, 55 S.W.2d 986, 990[7, 8].

There was no issue between the plaintiffs and the trustees as to the distribution of the share of an income beneficiary who died leaving descendants. The plaintiffs were basing their claim upon an attempted exercise of a power of appointment by an income recipient who left no descendants.

Therefore, although the trustees' cross-bill attempted to raise the issue, they did not make their codefendants and the parties to the litigation who were affected by the issue adversary parties to their cross-bill. Nor was it in any event an issue which the trustees were entitled to raise by the cross-bill. Finally, the judgment and decree does not purport to adjudge the issue against the codefendants. The decree found the issues on the cross-bill "against the said plaintiffs and against all [parties] defendants who have been permitted to assume the position of plaintiffs in this cause, and in favor of [the trustees], and Rebecca P. Dusenbery and Belle P. Bryant, individually; * * *."

The 1940 decree is, for these reasons, not res judicata of the issue here presented. "It is generally declared that a judgment operates as res judicata only with respect to parties who were adversaries in the proceeding wherein the judgment was entered. The general rule expressed or recognized in the cases is that parties to an action are not bound by the judgment therein in subsequent controversies between themselves where they were not adversaries in the action in which the judgment was rendered and their rights and liabilities inter se were not put in issue and determined in that action." 46 Am.Jur.2d Judgment, § 546, p. 701. That rule was applied in Charles v. White, supra, and

precludes application of the doctrine of res judicata based upon the 1940 decree. The trial court, therefore, properly held that the 1940 decree was not binding upon the Butchers.

There is no necessity to consider all of the cases cited and relied upon by appellants. They lay down the general rules for application of the doctrine of res judicata. None, however, deals with the situation here presented. Note is taken of the case of Payne v. St. Louis Union Trust Company, Mo.Sup., 389 S.W.2d 832, in which this court applied the doctrine of res judicata in a trust construction action. The distinction between that case and this is that the judgment there found to have previously determined the issue was entered in a case in which the persons seeking to avoid the effect of the prior judgment were parties and the issue adjudicated was raised directly by and adjudicated against those persons.

In the case of Shaller v. Mississippi Valley Trust Co., 319 Mo. 128, 3 S.W.2d 726, a prior adjudication as to the duration of a trust in an action in which the issue was directly raised and to which the persons later seeking to avoid the effect of the prior judgment were parties was held res judicata. The issue had been directly involved in the earlier action and had been litigated by the parties seeking to avoid the earlier judgment. Such was not the situation in the present case.

Appellants argue in their brief that the rule pertaining to adjudication among co-parties is not here applicable because some of the defendants did plead in opposition to the cross-bill. The file in the prior case shows that an answer to the cross-bill was filed by Elizabeth P. Peck, individually, Elizabeth P. Peck, Trustee under the Will of Charles H. Peck, Elizabeth P. Peck, Executrix of the Will of John A. Peck, deceased, and G. L. Schaberg, Executor of the Will of John A. Peck, deceased. These parties had no interest in the distribution of the share of an income benefi-

ciary under the will of Charles H. Peck who died leaving descendants and had no interest in the issue of whether or not the distribution to such beneficiaries was per stirpes or per capita, except insofar as Elizabeth P. Peck might have been interested as a trustee under the will of Charles H. Peck. The real interest of these answering defendants was in sustaining the will of John Peck, which was attacked by the cross-bill as well as by plaintiffs' petition. Their response to the cross-bill did not produce, on the issue here in question, an adjudication binding on their codefendants.

The rule applied in Hines v. Hines, 243 Mo. 480, 147 S.W. 774, 776[7], that an adjudication in a will contest annulling a will is applicable to all devisees and legatees does not assist appellants here. That rule gets into considerations of privity and presupposes a litigation of the question by a person directly interested, which did not occur in this case.

The trial court also determined, in paragraphs D, E and F of its decree, as prayed for by the trustees, the right of adopted children of the testator's descendants and of the child of an adopted child to share in the income on certain contingencies and in the distribution of the corpus of the trust upon its termination.

With the resolution of the question of whether or not the share of an income beneficiary went to his or her descendants per capita or per stirpes, any question of present right of an adopted child to income was eliminated. The adopted children of Thomas Butcher and the child of one of his adopted children would have had a present right to income in any event only if the share of Mary Peck Butcher was distributable per capita to her descendants. Likewise the question of whether the class of income beneficiaries reopened after the death of the predecessor beneficiary to admit persons who might thereafter become members of the class entitled to share in the income was no longer live in view of the determination that the persons presently entitled to the income were the children of Mary. Finally, three descendants of the testator were still living at the time of the trial. They were 70 and 71 years of age at the time of the trial in 1968. The trust continued for 15 years after the death of the last of them so there was no current need for the trustees to know to whom the trust should be distributed on its termination.

Under these circumstances and particularly in view of the involvement of the issue of rights of adopted children, the trial court should, in the exercise of its discretion, have declined to attempt to resolve these issues. The question of whether in the construction of wills, trusts and deeds, "class designations are deemed to include persons who claim membership in the class by virtue of adoption" has been said to be "by far the most significant of the various constructional problems involving adoptees, both in terms of the quantity of litigation and in terms of the need and opportunity for reform." Halbach, "the Rights of Adopted Children under Class Gifts," 50 Iowa Law Rev. 971. The problem has received frequent legislative attention. The National Commissioners on Uniform State Laws have proposed a uniform law on the subject. See Krauskopf, "Missouri Adoption Law and the Proposed Uniform Adoption Act," 26 Journal of the Missouri Bar 172. In the 76th General Assembly of Missouri, a bill on the subject was offered, but failed of passage. H.B. 913, 76th General Assembly. Other legislative proposals are referred to in a comment: "Eligibility of Adopted Children to take by Intestate Descent and under Class Gifts in Missouri," 34 Mo.Law Rev. 68, 93–96.

The problems in this area and proposed solutions make it inappropriate to adjudicate the rights of adopted children in a case where there is no present necessity for such an adjudication. There is no question that, under the Declaratory Judgment Law (§ 527.040, RSMo 1969, V.A.M.

S.), a court would presently have jurisdiction to render a determination such as that made here, but the exercise of such power should be withheld in these circumstances. § 527.060, RSMo 1969, V.A.M.S.

The decree of the trial court is amended by deleting therefrom Paragraphs D, E and F. As amended, the decree is affirmed.

Decree modified and affirmed as modified.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

HOLMAN, P. J., and SEILER, J., concur.

COTTEY, Special Judge, not participating in decision.

BARDGETT, J., not sitting.

ON MOTION OF PLAINTIFFS-RESPONDENTS TRUSTEES FOR MODIFICATION OF OPINION OR FOR REHEARING

PER CURIAM:

The trustees, by motion for modification of the foregoing opinion, have urged that the question of the right of adopted children to share in the income of the trust, under Clause Sixteenth, be resolved. The motion states that Thomas P. Butcher, the adoptive father of two adopted children, and a current income beneficiary, is now 67 years of age and that, in the event of his death, the trustees would be confronted with the question of the inclusion of his adopted children as his "descendants," under Clause Sixteenth.

Inasmuch as this question was fully litigated and was considered and adjudicated by the trial court and inasmuch as resolution of the question now may well avoid delay and expense in the future, the question will be decided. Hughes v. Neely, Mo. Sup., 332 S.W.2d 1.

Thomas P. Butcher is one of the three surviving children of Mary Peck Butcher. By the trial court's decree, Thomas P. Butcher is entitled to a 20% plus share in the income of the trust estate for the duration of the trust and during his lifetime. Thomas has one natural child, Nancy Sue Butcher, born October 17, 1943, and two adopted children, Steven Whitmore Butcher, born April 15, 1948, and Jeffrey Ross Butcher, born May 6, 1957. Steven has a daughter, Danika, born March 17, 1967, after this suit was filed.

In this court, the appellants attack as contrary to the intention of the testator as found in the language of the will the trial court's finding that the term "descendant" as used in Clause Sixteenth of the will includes adopted children. The respondents Steven and Jeffrey Butcher contend that the language of the will indicates an intention on the part of the testator to include adopted children of his blood descendants as income and corpus beneficiaries. Counsel for Danika Butcher urge further that, even if the will does not disclose an intention on the part of the testator to include adopted children of his descendants as income and corpus beneficiaries, the trial court correctly found that they were so included because there is no manifest intention to exclude them and, absent any such manifest intention to exclude, the law requires the inclusion of adopted persons.

The appellants and the respondents Steven and Jeffrey Butcher both deduce a clear expression of intention by the testator from his use of the term "descendants" in Clause Sixteenth. However, the parties reach diametrically opposed conclusions as to the intention so clearly expressed. Relying upon the time of the execution of the will as determining the meaning of the language used (First National Bank of

Kansas City v. Sullivan, Mo.Sup., 394 S.W. 2d 273, 281[7]; St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S.W.2d 685, 688[6]; Papin v. Papin, Mo.Sup., 445 S.W.2d 350, 353[1, 2]), and the testator's presumed knowledge of the law as it stood at that time (Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135, 139; Hood v. St. Louis Union Trust Co., 334 Mo. 404, 66 S.W.2d 837, 839 [4, 5]), appellants argue that the adoption law in effect at the time of Peck's drawing and execution of his will (§ 970, RSMo 1889) and which created rights in the adopted child against only "the persons executing the deed of adoption" precludes the inclusion as "descendants" of children adopted by anyone other than the testator, relying on the rule that the adoption statute then in effect gave full inheritance rights from the adoptive parents but denied any inheritance through adoptive parents. Hockaday v. Lynn, 200 Mo. 456, 98 S.W. 585. Appellants also attach significance to the use of the phrase "my descendants" and the definition by the testator of "descendants" to mean "lawful descendants" as evidencing what they find to have been the clear intent of the testator to limit his bounty to "lineal descendants."

The respondents Steven and Jeffrey Butcher, on the other hand, point to the absence of any limitation of the term "descendants" to "blood" or "lineal" descendants and argue that the phrase "lawful descendants" means simply that the testator recognized that with the passage of time, the meaning of the term "descendants" might change and that he was willing to let the passage of time "fix the determination of lawful descendants," as recognized in Thomas v. Higginbotham, Mo.Sup., 318 S.W.2d 234. They also argue that, at the time the will was executed, the term "descendants" included adopted children. They point out that, in Hayes v. St. Louis Union Trust Company, Mo.Sup., 280 S.W. 2d 649, in dealing with a will executed in 1915, at which time the adoption law was the same as it stood when Peck's will was written and executed, the court stated: "At the time the will was executed, an

adopted child under the Missouri law was a descendant of its adoptive parent. In re Cupples' Estate, 272 Mo. 465, 199 S.W. 556, loc. cit. 558(10); Williams v. Rollins, 271 Mo. 150, 195 S.W. 1009; Bernero v. Goodwin, 267 Mo. 427, 184 S.W. 74." 280 S.W.2d 654[5].

In Hayes, the will was executed in 1915. The testator died in 1919. In 1921, one of his sons and his wife adopted a daughter. Another son of the testator had a natural child. The adopted daughter also had a child at the time of her adoptive father's death in 1952. The will in question established a trust "for the equal and pro rata benefit of my eight children now living, or their heirs and survivors * *." Income from the trust was to be distributed "in equal shares, per stirpes, among my surviving children and the descendants of any deceased child or children of mine. And each of such surviving children, and each of the descendants of a deceased child of mine, shall receive or have used for his or her benefit, as hereinafter provided, his or her share of said net income during his or her natural life, or until his or her share of the principal of said trust estate shall have been distributed to him or her." Upon termination, the trust estate was to be divided "in equal shares among my grandchildren then living and the descendants of any deceased grandchild who may leave descendants then living, * * * and in such final distribution no advancements made to any child of mine shall be charged against his or her descendants."

In holding that the adopted daughter should share in the income and principal of the estate the same as the lineal descendants of the testator and that the child of the adopted daughter should also do so, in the event the contingency should arise, the court stated (280 S.W.2d 654–655):

"Plaintiffs-respondents on this appeal rely greatly on the words 'grandchildren' and 'grandchild' and argue that the use of those words by the testator indicated that he meant to include as beneficiaries of the will only those who were of the testator's own

blood. To do this it would be necessary to say by the designation 'grandchildren' in the last part of Section Three of the will that the testator meant to · say 'lineal descendants' in other parts of the will when, in fact, the testator said 'descendants.' It would also require an interpretation of the word 'heirs' as employed by the testator to mean 'heirs of the body.' The testator employed the words 'descendant' or 'descendants' many times in the body of the will and not once did he preface them with 'lineal.' Not only that, not once did he refer to the descendants as 'my descendants' but always as the descendants of his children. It will also be noted that in the codicils the word 'lineal' was not used with the words 'descendant' or 'descendants.' In the case of Trautz v. Lemp, supra, 46 S.W.2d loc. cit. 140, 141(8–15), cited by plaintiffs, this court en banc pointed out that the testator whose will was before the court for interpretation employed the words *'lineal* descendants.' (Emphasis ours.) The court also said, 46 S.W.2d loc. cit. 139, that a testator is presumed to know the law. Had the testator in the case now before us intended to limit his estate to his lineal descendants, he could have employed the word, 'lineal' or have limited the remainder after the life estate to his children and the heirs of the body. We must be governed by what the testator said in his will. Brock v. Dorman, supra, [339 Mo. 611,] 98 S.W. 2d [672] loc. cit. 675(5)."

The Hayes case was the primary authority relied upon in St. Louis Union Trust Co. v. Greenough, Mo.Sup., 282 S.W.2d 474. That case involved the will of Adolphus Busch, executed in 1908, with three codicils, the last in 1912, which created a trust with income to the testator's daughter for life, remainder to her children, or if none, to the daughter's brothers and sisters or "descendants of brothers and sisters." The daughter died in 1952, leaving no children, and survived by, among others, the adopted son of a daughter of another sister. The adoption had occurred five years after the testator's death in 1913. The operative

language considered by the court was (282 S.W.2d 479[6] ) :

" * * * If there be no child or descendants of a child, then said share shall go absolutely to the brothers and sisters of my said daughter, and the then living descendants of deceased brothers and sisters, per stirpes and not per capita."

In holding that the adopted child took the share of the trust which his adoptive mother would have received, the court stated that Hayes was decisive of the question and required a conclusion in favor of the taking by the adopted child. The court further stated (282 S.W.2d 483[9–11]) :

" * * * Thus, if it be supposed (contrary to our analysis of that opinion (that Hayes is not decisive of the instant question because of language in the Hayes will not found in the instant will and because other circumstances were present with respect to the time of the excution of the codicils in the Hayes case, still it cannot be gainsaid that the rationale of the Hayes opinion when applied to the facts and the language in question in the present case effectively controls our ultimate conclusion in the instant case. For, at the very least, Hayes demonstrates that in will construction this court will construe 'descendants of brothers and sisters' to include an adopted child of a sister's daughter whether or not that language was used in a will executed prior to the enactment of the 1917 Adoption Act, unless from the whole will testator's contrary intention appears."

In the present case, appellants point out that in Hayes the court specifically referred to the absence of any reference to "my descendants" and urge that, in the Peck will, such reference appears frequently in Clause Sixteenth, thereby evidencing an intention to limit "descendants" to "lineal descendants." However, when the testator defined "descendants" he did not define them as "lineal," choosing the term "lawful" instead, nor did he in his definition define the term as *"my* lawful

descendants." In any event, the reference in other provisions of Clause Sixteenth to "my descendants" would no more require the exclusion of adopted children in the construction of the provision here directly in question than the reference to "my grandchildren" in Hayes.

Appellants argue that, in Hayes and Greenough, the gifts were expressed in terms of relationship to the named legatee, not in terms of relationship to the testator. Although the language of this case does not present as clear a case as was involved in Hayes and Greenough, the language providing that successor beneficiaries should receive "the share their deceased parents would have received" does place the emphasis upon the relationship of the successor to his parent, and, as pointed out in Hayes and Greenough, at the time this will was adopted, an adopted child was a "descendant" of his adoptive parent.

In the ultimate analysis, the language here involved fails to reveal any clearly expressed intention on the part of the testator with respect to the status of adopted children of his grandchildren to share in the income from the trust. Since the language used is not sufficiently expressive of an intention to exclude them, the Greenough rule allowing their inclusion should be applied. Such rule is consistent with the public policy expressed in the consistently liberalized adoption statutes of this state and does no violence to any ascertainable intention on the part of the testator here. In that respect, it may be noted that in cases subsequent to Greenough and in which the rule there applied was not followed, such as Papin v. Papin, Mo.Sup., 445 S.W.2d 350, Knox College v. Jones Store Co., Mo.Sup., 406 S.W.2d 675, and First National Bank of Kansas City

v. Waldron, Mo.Sup., 406 S.W.2d 56, the language involved was found to exhibit an intention to exclude adopted children. In Papin, for example, the operative language was "heirs at law by blood related to the grantor" (445 S.W.2d 354); in Knox College, "such other children, if any, as may be born to [A]" (406 S.W.2d 689–690[10], [11]; and in Waldron, "their children born in lawful wedlock" (406 S.W.2d 59).

The language here is not so specific as to express a clear intention to exclude the adopted children from sharing in the income of the trust under Clause Sixteenth of the will of Charles Peck and therefore the trial court properly concluded that they were entitled to share in the income of the estate should the contingency arise.

No suggestion has been made that the right to distribution upon termination of the trust should be determined at this time and therefore, that portion of the trial court's decree, as set out in Paragraph E, will be deleted. Inasmuch as the distribution of income is held to be per stirpes, Paragraph F of the trial court's decree should not be disturbed.

Paragraph D of the trial court's decree should be deleted and the following substituted therefor:

"D. In Clause Sixteenth of the Will of Charles Peck, the word 'descendants,' insofar as it describes and defines persons entitled to share in the income of the trust estate under said Clause Sixteenth, includes those persons becoming descendants by adoption."

As above modified, including the deletion of Paragraph E and the substitution of the foregoing for Paragraph D, the trial court's decree is affirmed.